S. B. ALEXANDER, JR., *v.* NORTH CAROLINA SAVINGS BANK AND TRUST COMPANY.

(Filed 3 May, 1911.)

1. Corporations — Subscriptions to Stock — Conditions — Collateral Agreement.

Collateral agreement to a subscription of stock in the formation of a corporation which renders the subscription void unless the company has a paid-in capital in a certain sum is valid and binding.

2. Same—Waiver.

A waiver must be made with knowledge of the conditions under which it is sought to be established, so that the intention to waive a right may in some way appear, and when there is contradictory evidence as to such conditions and intention the question is a proper one for the jury.

3. Same—Proxy.

A subscriber to shares of stock in a corporation being organized upon agreement that his subscription will not be binding upon him if the capital be less than a certain amount, is not held to have waived his rights by subsequently being represented by proxy at a stockholders' meeting after the capitalization had been fixed in a less amount, when he was reasonably unaware of that fact and had been misled by the acts of the corporation.

CLARK, C. J., did not sit.

APPEAL by defendant from *Long, J.,* at the November Term, 1910, of MECKLENBURG.

*Thos. W. Alexander for plaintiff.*
*T. J. Gold and Stewart & MacRae for defendant.*

PER CURIAM. This action was brought to recover the amount of a promissory note, two hundred and fifty dollars, which had

been given by the plaintiff to the defendant in part payment of the purchase price of stock in the defendant company, and which was afterwards paid to it by the plaintiff, and also to have surrendered for cancellation a note for a like amount given by the plaintiff to the defendant for the balance of the purchase money. Plaintiff had contracted to buy the stock and to pay for it five hundred dollars, but, as he alleged, upon the express condition that liability on the notes should not accrue until the defendant had received actual subscriptions to its capital stock in the amount of two hundred and fifty thousand dollars, and that if that amount was not subscribed, the notes should be void and of no effect. This condition or stipulation plaintiff alleged was contained in a collateral and contemporaneous written instrument which had been lost, and the parties respectively offered proof as to its contents, the plaintiff's evidence tending to show that there was such a stipulation in the writing and the defendant's the contrary, and that the reference was not to subscribed but to authorized capital stock. The court submitted issues to the jury, which, with the answers thereto, are as follows: 1. Was the defendant, the North Carolina Bank and Trust Company, chartered by special act of the Legislature, and if so, when? Answer: Yes, by Articles of Association filed with the Secretary of State and certified by him 9 June, 1906, as per page one, book of company filed in evidence; and by Act of Assembly ratified 15 March, 1907; also see sec. 5 as amended and ratified, Special Session, Acts of General Assembly, 27 July, 1908, all of which is answered as set out in evidence. 2. Did the plaintiff subscribe for ten shares of the capital stock of the par value of $100 each, in the defendant company, and if so, at what time? Answer: Yes, July, 1906. 3. Did the plaintiff pay into defendant company $250 upon his subscription to the defendant and in response to the first call? Answer: Yes, on the 5th day of August, 1906. 4. Did the plaintiff execute note for $250 10 September, 1907, for second installment on subscription? Answer: Yes. 5. Did the plaintiff subscribe for stock in the defendant company upon the condition and assurance that the subscribed capital stock would be $250,000, and that his subscription thereto was not to be binding upon him unless and

until the $250,000 was actually subscribed to the stock of the
company? Answer: Yes. 6. If so, did the plaintiff waive the
alleged condition that the subscription to the capital stock should
amount to at least $250,000? Answer: No. 7. Did the defend-
ant company fail to secure the amount of $250,000 of *bona fide*
subscriptions to the capital stock, and did the defendant reduce
its capital stock from $250,000, as alleged in the complaint?
Answer: Yes. 8. Did the defendant release *bona fide,* solvent
subscribers to its capital stock without the knowledge or con-
sent of the plaintiff, and after the plaintiff had made his sub-
scription to the stock under the conditions set forth in this
complaint? Answer: Yes. 9. Has there been a fundamental
change in the charter of incorporation of the defendant com-
pany since the date of plaintiff's subscription, without the knowl-
edge or consent of the plaintiff? Answer: Yes. 10. In what
amount, if any, is the defendant indebted to the plaintiff?
Answer: $250, with interest from 5 August, 1906.

The defendant contended that if there was any such condition
annexed to the subscription of the plaintiff, it had been waived
by him in that, after he had learned that the defendant had not
secured $250,000 of subscriptions to its stock, he appointed one
Williamson, as his proxy, to represent him at a corporate meet-
ing, and that he was so represented. At the meeting the stock-
holders of the company released certain subscribers, including
the plaintiff, so that its stock was greatly reduced. At no time
did the subscribed stock equal the stipulated amount or as much
as half of it. The defendant contended that while he gave the
proxy to Williamson, he had been induced, at the time, by cor-
respondence with the defendant, to believe that $250,000 had
been subscribed; that the defendant's letter-heads so indicated,
and that relying upon this as the truth, he acted as he did. He
also contended that there was no sufficient evidence to show that
Williamson ever accepted the proxy and attended the meeting.
The proxy was found among the papers of the defendant. His
Honor, Judge Long, submitted the case to the jury upon the
issues and conflicting evidence, under a charge exceptionally
full, clear and just. The material issues involved largely mat-
ters of fact, and were peculiarly fit for the consideration and de-

cision of the jury, there being but few, and they simple proposi-
tions of law. The jury found as facts that the plaintiff's sub-
scription to the stock was conditional, and that there had been
no waiver. There was nothing unlawful in the condition. The
parties had the right so to contract if they so desired. This is
frankly conceded in the defendant's brief. *Printing Co. v.
McAden,* 131 N. C., 183; *Penniman v. Alexander,* 111 N. C.,
428; *Kelly v. Oliver,* 113 N. C., 443. Upon the subject of
waiver, the law seems to be well settled. "A waiver is an inten-
tional relinquishment of a known right. Waiver is voluntary
and implies an election to dispense with something of value, or
forego some advantage which the party waiving it might, at his
option, have demanded or insisted upon. A waiver of an agree-
ment or of a condition may either be by word of mouth, or it
may arise out of such acts and conduct of the party as would
naturally and properly give rise to an inference that he intends
to waive the agreement or condition. A waiver takes place where
a man dispenses with the performance of something which he
has a right to exact. A man may do that not only by saying that
he dispenses with it, that he excuses the performance, or he may
do it as effectually by conduct which naturally and justly leads
the other party to believe that he dispenses with it. There can
be no waiver unless so intended by one party and so understood
by the other, or one party has so acted as to mislead the other."
Herman on Estoppel, sec. 825. "There can be no waiver unless
the person against whom the waiver is claimed had full knowl-
edge of his rights and of facts which will enable him to take
effectual action for the enforcement of such rights. No one can
acquiesce in a wrong while ignorant that it has been committed,
and that the effect of his action will be to confirm it. To con-
stitute a waiver on the part of one party to a contract, of the
performance of the contract on the part of the other party, it
must be shown that the party alleged to have waived his rights
had knowledge of what the other party had done contrary to the
terms of the contract and what part thereof he had failed to
perform; and if the contract is affirmed in ignorance of facts
by which it is invalidated, there is no waiver of the right to
rescind. . . . The burden of proving knowledge is on one

who relies upon a waiver, and such knowledge must be plainly made to appear. Certainly a presumption of waiver cannot be rested on a presumption that the right alleged to have been waived was known. The validity of a waiver requires that it shall have been made intentionally and voluntarily. Indeed, voluntary choice is of the essence of waiver, and the view that waiver is a legal result operating upon a certain state of facts, independent of intent, has been declared to be without foundation. It has been held that a waiver never occurs unless intended, or where the act relied on ought in equity to estop the party from denying it." 29 Am. & Eng. Enc. of Law (2 Ed.), p. 1093. The conduct of a party may sometimes be such as to require the courts to treat it as a waiver, ratification or estoppel, without regard to actual knowledge of the facts, but we have no such case here.

We conclude that the case has been tried in, at least, substantial accordance with the law and, if any technical error there be, it was not prejudicial and is not, therefore, such as entitles the defendant to a reversal of the judgment which was entered for the plaintiff upon the verdict. *Hulse v. Brantley,* 110 N. C., 134.

No error.

CLARK, C. J., not sitting.