CLARKSON, J., did not sit.
Civil action to recover the sum of $5,000, same being the first call of 10 per cent on defendant's subscription for 500 shares of the capital stock of the plaintiff corporation of the par value of $100 per share.
The defendant's original stock subscription reads as follows: *Page 710 
"$50,000.00. Charlotte, N.C. 10 April, 1920.
"The undersigned, in consideration of similar subscriptions of other subscribers, hereby subscribes for and agrees to and with the following named trustees, to wit:
"H. M. Victor (chairman), Robert Lassiter, W. H. Wood, W. S. Alexander, E. D. Latta, W. H. Twitty, Julian H. Little, C. C. Coddington, A. J. Draper, Joe Garibaldi, J. A. Durham, and J. H. Wearn, that he will take and pay for 500 shares of the par value of $100 each of the capital stock of a corporation to be formed under the laws of North Carolina by said trustees, or such number of them as may apply therefor, with a capital stock of not less than $750,000, for the purpose of purchasing the necessary real estate in the city of Charlotte and building a hotel thereon. The said stock is to be issued when the said corporation is organized, and paid for in such installments as the board of directors may order, the first installment to be not exceeding 20 per cent of the par value due and payable at the time of organization, and subsequent installments of not exceeding 20 per cent each to be payable at intervals of not less than four (4) months.
"The foregoing subscription is made upon the condition that subscriptions for $750,000 of stock shall be secured within six months from 1 April, 1920, and that a valid proposal for a contract to lease the proposed hotel shall be received from a responsible party within twelve months from 1 April, 1920, the rent to be not less than a 6 per cent return on the investment. Lessee to pay all taxes, insurance, and upkeep.
 Witness: (Name) E. D. LATTA, JNO. M. SCOTT. (Address) Charlotte, N.C."
Having secured uniform subscription contracts, like the above, totaling $777,400 prior to 30 April, 1920, the defendant and three other "trustees" and one additional subscriber, designating themselves as incorporators, made application, in due form, for articles of incorporation, and upon which the Secretary of State issued a charter to the plaintiff company.
In this application, the defendant represented himself as subscribing for 500 shares of stock, the same amount as in his original subscription contract, and further agreed that the corporation can organize and begin business when $107,000 of the capital stock, composed of 1,070 shares, shall have been subscribed." This was the amount of stock subscribed by the incorporators.
The charter contains none of the conditions set forth in the uniform stock subscription, but provides that the corporation shall have power *Page 711 
"to engage in, carry on and conduct a hotel business, either itself or through its lessee or lessees, successors or assigns," and "to build all necessary buildings and to buy, lease, or otherwise acquire all necessary property, either real or personal, for said purposes, . . . to purchase, hold, sell, mortgage by deed of trust or otherwise, and to convey or sell real estate and personal property for the proper conduct of the business of the corporation," . . . anywhere in the United States.
After the charter was received by the incorporators, they all, including the defendant, signed a written agreement waiving notice and designating the time and place to hold the meeting for the organization of the corporation, and caused a notice to be sent out to every subscriber inviting him to come and participate in the meeting, which was held on 11 May, 1920, as agreed; and while the defendant could not be present, he requested H. M. Victor to be present and look after his interests, and Mr. Victor was present and took part in the meeting.
The corporation was duly organized. The board of directors elected officers, and they shortly thereafter began to consider sites for the hotel, and the defendant appeared before the board in person once or twice, trying to sell them a site for the hotel, without any conditions or reservations, and wrote them some two or three times on the same subject and to the same purpose and effect.
Owing to the depressed business conditions that soon followed, the officers of the company decided to defer action for a while, and sent to all the subscribers for stock, including the defendant, a letter dated 3 September, 1920, advising that they would defer action until the following year.
In the early part of 1921 the officers became active and finally obtained propositions from two parties to lease the proposed hotel, and contracted with one set of proposed lessees, and notified the stockholders thereof.
They rejected the sites offered by the defendant and selected and agreed to purchase one for the hotel, with the benefit of the judgment and approval of the lessees, at the corner of West Trade and Poplar streets, in the city of Charlotte, and then made a call of 10 per cent on all the stock subscribers, and gave notice of said call for the same to be due 10 January, 1922.
The defendant never questioned his liability on his subscription until after he received notice of the said first call, to which he replied that he would not pay either that or any other call, and denied his liability intoto.
The plaintiff instituted this suit on 20 March, 1922, to recover the said first call, and founded its cause of action solely upon the agreement of the defendant as set forth in the charter. *Page 712 
The defendant answered, admitting the execution of the charter, notice of the call, and his refusal to pay, and set up as a defense that he did not intend by signing the charter to subscribe for any different amount of stock or upon any different terms than as set forth in his original subscription, which he pleaded as a defense, claiming that certain stipulations set forth therein were and are conditions precedent to his liability to take and to pay for his subscribed stock, that they had not been performed, and therefore he was not bound by his subscription. He also denied in his answer the legal existence of the plaintiff, or the right of any one ever to have acted for it.
The plaintiff filed a replication, pleading that the original liabilities of the defendant were merged in or superseded by the charter, but if that were not so that the said stipulations pleaded by him were not conditions precedent, and even if they were they had been fully performed in so far as necessary, but if they had not, the defendant waived the same by his conduct in signing the charter, helping to organize the corporation or agreeing for it to be organized, and his attempts to deal with it and fasten obligations upon it through its officers.
Upon the issues thus joined, the jury returned the following verdict:
"1. Did the defendant subscribe to the articles of incorporation marked "Exhibit A', attached to the complaint? (By consent.) Answer: `Yes.'
"2. Did the plaintiff make a call of 10 per cent on all stock subscriptions, including that of the defendant, on or about 8 December, 1921, to be due and payable 10 January, 1922, and give defendant due and proper notice thereof? (By consent.) Answer: `Yes.'
"3. Did the defendant fail and refuse to make payment of the amount of the said call? (By consent.) Answer: `Yes.'
"4. Was the condition of the uniform subscription contract that subscriptions for $750,000 of stock shall be secured within six months from 1 April, 1920, complied with? Answer: `Yes.'
"5. Did the defendant waive compliance with provision of the uniform subscription contract requiring that subscriptions for $750,000 of stock shall be secured within six months from 1 April, 1920? Answer: `Yes.'
"6. Was the condition of the said uniform subscription contract that a valid proposal for a contract to lease the proposed hotel shall be received from a responsible party within twelve months from 1 April, 1920, the rent to be not less than 6 per cent return on investment, and lessee to pay all taxes, insurance and upkeep, complied with? Answer: `Yes.'
"7. Did the defendant waive compliance with the condition of the uniform subscription contract that a valid proposal for a contract to *Page 713 
lease the proposed hotel shall be received from a responsible party within twelve months from April, 1920, the rent to be not less than 6 per cent return on investment, and lessee to pay all taxes, insurance and upkeep? Answer: `Yes.'
"8. In what amount is defendant indebted to the plaintiff on account of the call of 10 per cent made by plaintiff on or about 8 December, 1921? Answer: $5,000, and interest from 10 January, 1922.'"
From a judgment on the verdict in favor of plaintiff, the defendant appeals, assigning errors.
After stating the facts as above: The record in the instant case is voluminous; it contains, in all, 80 exceptions and 79 assignments of error. After a careful and painstaking investigation of the hold matter, we are constrained to believe that the case has been tried substantially in accordance with the law bearing on the subject, and that the validity of the trial should be sustained. Apparently all matters in dispute have been settled by the verdict, and no action or ruling on the part of the trial court has been discovered by us which we apprehend should be held for reversible error.
In their final analysis, the questions of law presented for our consideration arrange themselves in a narrow compass. The defendant contends (1) that his rights and liabilities are to be determined entirely by the provisions of the uniform subscription contract without reference to anything else, and (2) that the conditions contained in the last paragraph of said subscription contract, as above set forth, are conditions precedent which have never been performed. In support of this position, defendant relies strongly upon the case of Alexander v. Savings Bank 155 N.C. 124. But the verdict in the Alexander case is quite different from the one in the case at bar, and for this reason it cannot be considered as a controlling authority. On the contrary, we think the principles announced in Cooperative Assn. v. Boyd, 171 N.C. 184, are more nearly applicable to the facts of the instant case, though it is conceded the two cases are somewhat dissimilar.
In the present case it should be remembered that the defendant was one of the trustees named in the uniform subscription contract; that he signed the articles of incorporation and agreed for the plaintiff company to be organized, and thereafter he offered to sell to the plaintiff a hotel site, etc. Upon evidence of this character, all the controverted *Page 714 
issues of fact have been answered by the jury in favor of the plaintiff. The case is distinguishable from those cited and relied on by defendant's counsel in their elaborate brief by virtue of the verdict rendered herein. The rights of the parties have been settled by the jury in a cause tried in conformity to established principles of law. We have been unable to find any reversible error on the record.
No error.
CLARKSON, J., did not sit.