IN THE MATTER OF: A.D.L., J.S.L., C.L.L.

No. COA03-1333

(Filed 19 April 2005)

**1. Termination of Parental Rights— order 16 days late—not prejudicial**

A termination of parental rights order was not reversed for being filed 16 days after the 30-day limit provided by N.C.G.S. § 7B-1109(e) where respondent did not show prejudice from the late filing. The General Assembly's intent in imposing the time limit was to provide a speedy resolution in juvenile custody cases; holding that adjudication and disposition orders should be reversed simply because they were untimely filed would only further delay the determination while new petitions were filed and new hearings held.

**IN RE A.D.L., J.S.L., C.L.L.**

[169 N.C. App. 701 (2005)]

**2. Termination of Parental Rights— guardian ad litem— appointment papers not filed—no prejudice**

The failure of the record to disclose guardian ad litem appointment papers for the juveniles in a termination of parental rights proceeding did not necessitate reversal where it was clear that the guardian ad litem followed her statutory duties. Clerical or technical violations such as the failure to file an appointment order do not in themselves require reversal. Prejudice must be shown.

**3. Termination of Parental Rights— Indian Child Welfare Act—tribe not recognized by federal government**

A termination of parental rights was not reversed for failure to follow the federal Indian Child Welfare Act of 1978 where the children were Lumbee, a tribe recognized by North Carolina but not the federal government.

**4. Termination of Parental Rights— allegations of neglect— sufficient**

The factual allegations in a petition to terminate parental rights were sufficient to give respondent notice of the issue of neglect and the trial court did not err by considering the issue.

**5. Termination of Parental Rights— neglect—leaving children in foster care**

The evidence in a termination of parental rights proceeding was sufficient to establish that respondent willfully left her children in foster care without making reasonable progress to correct the conditions which led to removal of the children.

**6. Termination of Parental Rights— neglect—evidence sufficient**

The trial court did not abuse its discretion in terminating respondent's parental rights where DSS had received and investigated allegations of neglect involving respondent since 1997; lack of supervision of the children was established in 2000; respondent-mother and the father failed to comply with drug assessments and tested positive for drugs; both failed to obtain and maintain employment and stable housing; and both failed to take the appropriate steps toward reunification.

Appeal by respondent-mother from order filed 7 October 2002 by Judge Wendy M. Enochs in Guilford County District Court. Heard in the Court of Appeals 25 August 2004.

IN RE A.D.L., J.S.L., C.L.L.

[169 N.C. App. 701 (2005)]

*Guilford County Attorney Jonathan V. Maxwell, by Deputy County Attorney Michael K. Newby, for petitioner-appellee Guilford County Department of Social Services; and Attorney Advocate Joyce Terres for the Guardian at Litem Program.*

*Katharine Chester for respondent-appellant.*

BRYANT, Judge.

J.L.[1] (respondent-mother) appeals an order filed 7 October 2002, terminating her parental rights. as to A.D.L. (D.O.B. 1 November 1996), J.S.L. (D.O.B. 18 February 1998), C.L.L. (D.O.B. 23 December 2000) based on the grounds of neglect, willfully leaving the children in foster care for more than twelve months without a showing of reasonable progress, and willful failure to pay a reasonable portion of the cost of care.[2]

On 15 August 2001, Guilford County Department of Social Services (DSS) filed a petition alleging that the three children were neglected. The matter came for non-secure custody hearing and a "7-Day" hearing on 16 August 2001 and 30 August 2001, respectively. The children were in the care of their maternal grandparents at the time of the hearings; and the district court ordered care to be continued with the grandparents and for legal custody to remain with DSS.

The neglect adjudication and disposition hearing was held on 4 October 2001, and an order was filed on 2 January 2002, finding the children remained neglected. No further review hearings were held until 10 January 2002, at which time a permanency planning review hearing was held. The district court ordered care to be continued with the grandparents, basing its order on the recommendations of the guardian ad litem and social workers involved in the case. A second permanency planning review hearing was held on 7 March 2002, at which time the district court rendered an order finding that it would be in the best interest of the children for the respondent's parental rights to be terminated. The district court continued care of the children with the maternal grandparents.

On 6 May 2002, DSS filed a petition seeking the termination of respondent's parental rights based on the grounds of neglect, willfully leaving the children in foster care for more than twelve months with

---

1. Initials are used throughout to protect the identity of the juveniles.

2. By the same order, the respondent-father's parental rights were terminated; however, this appeal only concerns the termination of respondent-mother's parental rights.

out a showing of reasonable progress, and willful failure to pay a reasonable portion of the cost of care. This matter came for hearing at the 19 and 22 August 2002 session of Guilford County District Court with the Honorable Wendy M. Enochs presiding. The district court terminated respondent's parental rights, based on the grounds alleged, by order filed 7 October 2002. Respondent gave notice of appeal in open court and written notice of appeal on 7 October 2002.

---

Respondent presents several issues on appeal including whether: (I) the district court's adjudication and disposition order must be vacated because the order was filed more than 30 days following the date of hearing; (II) the district court's decision must be reversed because it failed to appoint a guardian ad litem for the children; (III) the district court's order should be reversed because DSS failed to accord any respect to the Native American heritage of the children in violation of the Indian Child Welfare Act; (IV) the district court's order must be reversed because the TPR petition did not allege the ground of neglect, and the findings were not based upon clear, cogent and convincing evidence; and (V) the district court's order must be reversed because it was not in the best interest of the children to terminate respondent's parental rights.

I

[1] Respondent first argues the district court's adjudication and disposition order must be vacated because the order was filed more than 30 days following the date of hearing.

N.C. Gen. Stat. § 7B-1109(e) provides:

The court shall take evidence, find the facts, and shall adjudicate the existence or nonexistence of any of the circumstances set forth in G.S. 7B-1111 which authorize the termination of parental rights of the respondent. The adjudicatory order shall be reduced to writing, signed, and entered no later than 30 days following the completion of the termination of parental rights hearing.

N.C.G.S. § 7B-1109(e) (2002) ("Session Laws 2001-208, § 7 and 22, effective January 1, 2002, and applicable to actions pending or filed on or after that date, . . . added the last sentence of subsection (e).") N.C. Gen. Stat. § 7B-1110(a) provides:

Should the court determine that any one or more of the conditions authorizing a termination of the parental rights of a parent exist, the court shall issue an order terminating the parental

IN RE A.D.L., J.S.L., C.L.L.

[169 N.C. App. 701 (2005)]

rights of such parent with respect to the juvenile unless the court shall further determine that the best interests of the juvenile require that the parental rights of the parent not be terminated. Any order shall be reduced to writing, signed, and entered no later than 30 days following the completion of the termination of parental rights hearing.

N.C.G.S. § 7B-1110(a) (2002) ("Session Laws 2001-208, § 23, effective January 1, 2002, and applicable to actions pending or filed on or after that date, added the last sentence of subsection (a.)")

In the instant case, the termination of parental rights (TPR) petition was heard, on 19 and 22 August 2002, and was adjudicated and disposition decreed on 22 August 2002. However, the order was not filed until 7 October 2002 (more than 30 days following adjudication and disposition). While the district court's delay violated the 30-day provision of N.C. Gen. Stat. §§ 7B-1109(e), 1110 (a), we find no authority that the TPR order must be vacated as a result.

The General Assembly added the 30-day filing requirement to these statutes in 2001. *In re E.N.S.*, 164 N.C. App. 146, 153, 595 S.E.2d 167, 171 (2004). While we have located no clear reasoning for this addition, logic and common sense lead the Court to the conclusion that the General Assembly's intent was to provide parties with a speedy resolution of cases where juvenile custody is at issue. *E.N.S.*, 164 N.C. App. at 153, 595 S.E.2d at 172. Therefore, holding that the adjudication and disposition orders should be reversed simply because they were untimely filed, would only aid in further delaying a determination regarding the children's custody because juvenile petitions would have to be re-filed and new hearings conducted. *Id.*

This Court has held a party must show prejudice for a violation of either N.C. Gen. Stat. §§ 807(b)[3] or 905(a)[4]. *E.N.S.*, 164 N.C. App. at

---

3. The adjudicatory order shall be in writing and shall contain appropriate findings of fact and conclusions of law. The order shall be reduced to writing, signed, and entered no later than 30 days following the completion of the hearing.

N.C.G.S. § 7B-807(b) (2003).

4. The dispositional order shall be in writing, signed, and entered no later than 30 days from the completion of the hearing, and shall contain appropriate findings of fact and conclusions of law. The court shall state with particularity, both orally and in the written order of disposition, the precise terms of the disposition including the kind, duration, and the person who is responsible for carrying out the disposition and the person or agency in whom custody is vested.

N.C.G.S. § 7B-905(a) (2003).

**IN RE A.D.L., J.S.L., C.L.L.**

[169 N.C. App. 701 (2005)]

153, 595 S.E.2d at 172 ("although the order was not filed within the specified time requirement, respondent cannot show how she was prejudiced by the late filing"). More on point, this Court in *In re J.L.K.*, 165 N.C. App. 311, 598 S.E.2d 387, 390-91 (2004), held the district court's violation of N.C. Gen. Stat. § 7B-1109(e), did not necessitate vacating the court TPR order. *J.L.K.*, 165 N.C. App. at 315, 598 S.E.2d at 390. ("While the trial court's delay clearly violated the 30-day provision of N.C. Gen. Stat. § 7B-1109(e), we find no authority compelling that the TPR order be vacated as a result.").

Here, respondent fails to show any prejudice to her resulting from the late filing of the TPR order. Therefore, the district court's failure to file the adjudication and disposition orders within 30 days amounted to harmless error and is not grounds for reversal. Accordingly, respondent's first assignment of error is overruled.

II

[2] Respondent next argues the district court's decision must be reversed because the court failed to appoint a guardian ad litem for the children.

N.C. Gen. Stat. § 7B-601(a) states in part, "[w]hen in a petition a juvenile is alleged to be abused or neglected, the court shall appoint a guardian ad litem to represent the juvenile. When a juvenile is alleged to be a dependent, the court may appoint a guardian ad litem to represent the juvenile." N.C.G.S. § 7B-601(a) (2003). Here, respondent argues the record fails to disclose guardian ad litem appointment papers, and accordingly, the district court's order must be reversed.

Our Supreme Court has previously held in assessing the impact of clerical or technical violations, such as failure to file an appointment order, does not in itself require the reversal of lower court orders. *See State v. Beam*, 184 N.C. 730, 742, 115 S.E. 176, 182 (1922), for a discussion of the following cases: *McKeel v. Holloman*, 163 N.C. 132, 79 S.E. 445 (1913) ("Technical errors will be considered harmless where a reversal would not result in a different verdict."); *Alexander v. Savings Bank*, 155 N.C. 124, 71 S.E. 69 (1911) ("Where a case is tried in substantial accordance with law, technical errors not prejudicial do not entitle the losing party to a reversal."); and *Rich v. Morisey*, 149 N.C. 37, 62 S.E. 762 (1908).

In order to obtain relief from an order due to a clerical or technical violation, the complaining party must demonstrate how she was prejudiced or harmed by the violation. *See Beam*, 184 N.C. 730, 742,

115 S.E. 176, 182, for a discussion of the following cases: *Penland v. Barnard*, 146 N.C. 378, 59 S.E. 1109 (1907) ("Error to warrant reversal must be prejudicial."); *Hulse v. Brantley*, 110 N.C. 134, 14 S.E. 510 (1892); *accord Carter v. R. R.*, 165 N.C. 244, 81 S.E. 321 (1914) ("Error alone is not sufficient to reverse, but there must be harm to the party who excepts, and if it appears there is none, his exception fails."). In this case, the respondent has failed to demonstrate such prejudice.

The record on appeal does not reflect a guardian ad litem appointment form was filed. However, except for the initial hearing following the entry of the non-secure order to assume custody of the juveniles in August of 2001, the guardian ad litem was noted as present at each and every hearing prior to and including the TPR hearing where she represented the interest of the children. In addition, the guardian ad litem was named in the TPR petition.

N.C. Gen. Stat. § 7B-601(a) provides:

(a) The duties of the guardian ad litem program shall be to make an investigation to determine the facts, the needs of the juvenile, and the available resources within the family and community to meet those needs; to facilitate, when appropriate, the settlement of disputed issues; to offer evidence and examine witnesses at adjudication; to explore options with the court at the dispositional hearing; to conduct follow-up investigations to insure that the orders of the court are being properly executed; to report to the court when the needs of the juvenile are not being met; and to protect and promote the best interest of the juvenile until formally relieved of the responsibility by the court.

N.C.G.S. § 7B-601(a) (2003) (emphasis added).

It is clear that the guardian ad litem followed her statutory duties under N.C. Gen. Stat. § 7B-601(a) to represent the juveniles in all actions under Chapter 7B. Since the guardian ad litem carried out her respective duties, failure of the record to disclose guardian ad litem appointment papers does not necessitate reversal of the district court's decision. This assignment of error is overruled.

### III

[3] Respondent next argues the district court's order should be reversed because DSS failed to accord any respect to the Native American heritage of the children in violation of the Indian Child Welfare Act.

**IN RE A.D.L., J.S.L., C.L.L.**

[169 N.C. App. 701 (2005)]

The Indian Child Welfare Act of 1978 (hereinafter ICWA or Act) was enacted to "protect the best interests of Indian children and to promote the stability and security of Indian tribes and families." 25 U.S.C.A. § 1902 (2005). Congress acknowledged in the Act that "an alarmingly high percentage of Indian families are broken up by the removal . . . of their children," and their placement in non-Indian homes. 25 U.S.C.A. § 1901(4) (2005). The Act provides "minimum Federal standards for the removal of Indian children from their families and the placement of such children in foster or adoptive homes which will reflect the unique values of Indian culture." 25 U.S.C.A. § 1902.

There are two prerequisites to invoking the requirements of ICWA. *In re Appeal in Maricopa County Juvenile Action No. A-25525*, 136 Ariz. 528, 531, 667 P.2d 228, 231 (1983). First, it must be determined that the proceeding is a "child custody proceeding" as defined by the Act. 25 U.S.C.A. § 1903(1) (2005). Once it has been determined that the proceeding is a child custody proceeding, it must then be determined whether the child is an Indian child. 25 U.S.C.A. § 1903(4),(9) (2005). Most importantly, the Act only applies to Indian children of federally recognized tribes. *See* 25 U.S.C.A. § 1903(8) (2005) (" 'Indian tribe' means any Indian tribe, band, nation, or other organized group or community of Indians recognized as eligible for the services provided to Indians by the Secretary because of their status as Indians."). " '[A] party to a proceeding who seeks to invoke a provision of the . . . Act has the burden to show that the Act applies in the proceedings.' " *In re Williams*, 149 N.C. App. 951, 957, 563 S.E.2d 202, 205 (2002) (citation omitted).

Respondent's children are registered members of the Lumbee Tribe. The Lumbee are a state-recognized Indian Tribe. N.C.G.S. § 71A-3 (2003). However, by respondent's own admission, the children are not part of a federally recognized tribe, and therefore, the provisions of ICWA do not apply. Thus, there is no evidence to support a finding that the child is an Indian child under ICWA, and ICWA regulations on placement are not relevant to the issue of termination in the instant case. *See* N.C.G.S. § 50A-104(a) ("A child-custody proceeding that pertains to an Indian child, as defined in the Indian Child Welfare Act, 25 U.S.C. § 1901 et seq., is not subject to this Article to the extent that it is governed by the Indian Child Welfare Act.") (2003). Accordingly, this assignment of error is overruled.

**IN RE A.D.L., J.S.L., C.L.L.**

[169 N.C. App. 701 (2005)]

IV

**[4]** Respondent argues the district court erred in considering the issue of neglect because the petition failed to allege that respondent had neglected the child. Respondent contends that consideration of the neglect issue was unfair because it did not put her on notice that she needed to defend against the allegation of neglect.

N.C. Gen. Stat. § 7B-1104(6) (2003), states that a petition for termination of parental rights shall state "facts that are sufficient to warrant a determination that one or more of the grounds for terminating parental rights exist." Factual allegations must be sufficient to put a respondent on notice regarding the acts, omissions, or conditions at issue in the petition. *In re Hardesty*, 150 N.C. App. 380, 384, 563 S.E.2d 79, 82 (2002).

Here, petitioner's factual allegations were sufficient to put respondent on notice regarding the issues in the petition. Specifically, the petition alleged that respondent-mother and father did not follow through with all the components of their case plan with DSS. The respondent-mother and father submitted to drug tests on 16 August 2001 and both tested positive for marijuana, cocaine, and benzodiazepines. With regard to employment, the respondent-mother failed to hold a job since the children were placed in custody, and the father failed to go to work although he was employed. Respondent-mother and father failed to obtain and maintain stable housing and take the appropriate steps towards reunification. Moreover, their visits were sporadic and they failed to pay child support while the children have been in DSS custody. The petition concluded by stating, "[t]herefore, the children continue to be neglected by their mother and father." These factual allegations were sufficient to give respondent notice regarding the issue of neglect. This assignment of error is without merit.

**[5]** Respondent next argues the district court's order must be reversed because the findings were not based upon clear, cogent and convincing evidence.

There are two stages of a hearing on a petition to terminate parental rights: adjudication and disposition. *In re McMillon*, 143 N.C. App. 402, 408, 546 S.E.2d 169, 173 (2001). At the adjudication stage, the petitioner has the burden of proving by clear, cogent, and convincing evidence that at least one statutory ground for termina-

tion exists. *Id. at* 408, 546 S.E.2d at 173-74. A finding of one statutory ground is sufficient to support the termination of parental rights. *In re Pierce*, 67 N.C. App. 257, 261, 312 S.E.2d 900, 903 (1984). Upon a finding that at least one statutory ground for termination exists, the district court proceeds to the disposition stage, where it determines whether termination of parental rights is in the best interest of the child. *McMillon*, 143 N.C. App. at 408, 546 S.E.2d at 174.

When reviewing an appeal from an order terminating parental rights, our standard of review is whether: (1) there is clear, cogent, and convincing evidence to support the district court's findings of fact; and (2) the findings of fact support the conclusions of law. *In re Huff*, 140 N.C. App. 288, 291, 536 S.E.2d 838, 840 (2000). Clear, cogent, and convincing evidence "is greater than the preponderance of the evidence standard required in most civil cases, but not as stringent as the requirement of proof beyond a reasonable doubt required in criminal cases." *In re Montgomery*, 311 N.C. 101, 109-10, 316 S.E.2d 246, 252 (1984). If the decision is supported by such evidence, the district court's findings are binding on appeal even if there is evidence to the contrary. *In re Williamson*, 91 N.C. App. 668, 674, 373 S.E.2d 317, 320 (1988).

N.C. Gen. Stat. § 7B-1111(a)(2), provides for termination of parental rights if "the parent has willfully left the juvenile in foster case or placement outside the home for more that 12 months without showing to the satisfaction of the court that reasonable progress under the circumstances has been made in correcting those conditions which led to the removal of the juvenile." N.C.G.S. § 7B-1111(a)(2) (2003).

Here, the TPR order contained the following findings of fact:

1. The Court finds pursuant to G.S. § 7B-1111(a)(1), the Respondents have neglected their Children. The Children were adjudicated neglected and dependent on or about October 4, 2001. The conditions which led to the adjudication of neglect and dependency and DSS custody of the children are as follows: the parents' unstable living conditions, the parents' continued drug use and the extensive DSS history on the family relating back to 1997 involving the same issues. The parents entered into a service agreement on 8/16/01. In this agreement the parents agreed to:

1) Obtain an ADS assessment and comply with recommendations in order to live a drug free lifestyle.

**IN RE A.D.L., J.S.L., C.L.L.**

[169 N.C. App. 701 (2005)]

2) Submit to random drug tests.

3) Cooperate with DSS by contacting their Social Worker at least twice a month.

4) Locate and maintain employment.

5) Apply at least 3 places a week for employment.

6) Locate and maintain stable housing.

7) Attend parenting classes and demonstrate their skills learned.

Neither parent complied with the terms of this service agreement or its updated versions on March 15, 2002 and June 20, 2002. . . . Overall neither parent has made significant effort to correct or improve the conditions which led to DSS custody of the children and therefore the Respondents continue to neglect the children.

2. Incorporating the finding of fact in Paragraph 1, above, the Court finds pursuant to G.S. § 7B-1111(a)(2), the Respondent has willfully left the Children in the foster care placement outside of the home for more than 12 months without showing to the satisfaction of the court that reasonable progress under the circumstances has been made within 12 months in correcting those conditions which left to the removal of the children.

3. The Court finds pursuant to G.S. § 7B-1111(a)(3), the Children have been placed in the custody of DSS and the Respondents have for a continuous period of six months next preceding the filing of the Petition, willfully failed for such period to pay a reasonable portion of the cost of care for the Children although physically and financially able to do so. . . .

4. The Court finds that it is in the best interest of the Children that the parental rights of [B.J.L.] and [J.L.] be terminated.

5. The Court finds that this Petition to Terminate Parental Rights was not filed to circumvent the provisions of Chapter 50A of the North Carolina General Statutes, the Uniform Child Custody Jurisdiction and Enforcement Act, and the Court would have jurisdiction to make a Child custody determination pursuant to G.S. § 50A-101, *et seq.*

**IN RE A.D.L., J.S.L., C.L.L.**

[169 N.C. App. 701 (2005)]

From these findings, the district court concluded as follows:

(1) The Court has jurisdiction over the parties and subject matter.

(2) The grounds alleged in the Petition to Terminate Parental Rights filed on or about May 6, 2002 and as set forth herein, have been proven by clear and convincing evidence.

(3) It is the best interest of the Children that the parental rights of the Respondents [B.J.L.] and [J.L.] be terminated.

In reviewing the evidence, we find the evidence competent to support termination of respondent's parental rights pursuant to N.C. Gen. Stat. § 7B-1111(a)(2). The district court made sufficient findings regarding respondent's progress or lack thereof. The children were adjudicated neglected and dependent on 4 October 2001. The TPR petitions were filed on 7 October 2002. Prior to that date, the record reflects that the children resided with their grandparents and great grandparents for six months without the parents providing any support; the parents had been using drugs; and respondent and her family had a history of involvement with DSS going back to 1997. Moreover, respondent failed to comply with the service agreement entered into on 16 August 2001. Respondent attempted to justify her non-compliance due to lack of transportation. However, she acknowledged that she could have taken the bus to look for employment and make her appointments.

We hold that the evidence is sufficient to establish that respondent willfully left her children in foster care without making reasonable progress under the circumstances to correct the conditions which led to removal of the children pursuant to N.C. Gen. Stat. § 7B-1111(a)(2). This assignment of error is overruled.

V

[6] Respondent lastly argues the district court's order must be reversed because it was not in the best interest of the children to terminate respondent's parental rights.

N.C. Gen. Stat. § 7B-1110(a), provides that a district court shall issue an order terminating the parental rights of the respondent unless the best interest of the juvenile requires that the parental rights of the parent not be terminated. N.C.G.S. § 7B-1110(a) (2003); see *In re Parker*, 90, N.C. App. 423, 431, 368 S.E.2d 879, 884 (1998).

**IN RE A.D.L., J.S.L., C.L.L.**

[169 N.C. App. 701 (2005)]

The district court's determination that termination of parental rights would be in the best interest of the child is reviewed applying an abuse of discretion standard. *In re Nolen*, 117 N.C. App. 693, 700, 453 S.E.2d 220, 225 (1995).

Here, DSS received and investigated allegations of neglect involving respondent and her family since 1997. Neglect was established on 7 February 2000 for lack of supervision. Thereafter, the family briefly received treatment services until moving to Randolph County. In August 2000, another report was received establishing domestic abuse; however, the family moved once again and services were not provided this time. In August 2001, the children were taken into custody on the non-secure order at the start of this case.

Respondent-mother and father failed to comply with ADS assessments. Both respondent-mother and father submitted to drug tests on 16 August 2001 and both tested positive for marijuana, cocaine, and benzodiazepines. Respondent-mother and father failed to obtain and maintain employment since the children were placed in custody. Respondent-mother and father failed to obtain and maintain stable housing and take the appropriate steps towards reunification.

Respondent has failed to present any evidence demonstrating an abuse of discretion, and further, our review of the record failed to indicate an abuse of discretion. Therefore, the assignment of error is overruled.

Affirmed.

Judge HUDSON concurs.

Judge TYSON concurs in separate opinion.

Tyson, Judge concurring.

I concur in the result reached by the majority, but offer further discussion of the timeliness issue concerning late entry of the order terminating respondent's parental rights.

This Court recently addressed this issue involving N.C. Gen. Stat. § 7B-1109(e) and § 7B-1110(a) in *In re L.E.B. & K.T.B.*, 169 N.C. App. 375, 610 S.E.2d 424 (2005). There, the adjudication and disposition order terminating the respondents' parental rights was not

reduced to writing, signed, and entered until over 180 days after the hearing. *Id.* at 377, 610 S.E.2d at 425. The respondent-mother in *In re L.E.B. & K.T.B.* argued the delay of more than six months was excessive and "prejudiced her by adversely affecting: (1) both the family relationship between herself and the minors *and* the foster parent and the minors; (2) delaying subsequent procedural requirements; and (3) the finality of the matter." *Id.* at 379, 610 S.E.2d at 426 (emphasis in original).

This Court considered its previous decisions where delays were held error, but not reversible without a showing of prejudice. *Id.* (citing *In re J.L.K.*, 165 N.C. App. 311, 314, 598 S.E.2d 387, 390, *disc. rev. denied*, 359 N.C. 68, 604 S.E.2d 314 (2004); *In re E.N.S.*, 164 N.C. App. 146, 153, 595 S.E.2d 167, 172, *disc. rev. denied*, 359 N.C. 189, 606 S.E.2d 903 (2004); *In re B.M., M.M., An.M., & Al.M.*, 168 N.C. App. 350, 355, 607 S.E.2d 698, 702 (2005)). We held the delay of six months was highly prejudicial. *Id.* The respondents, the minors, and the foster parent were all adversely affected by not receiving a "speedy resolution" to the matter, as mandated by the General Assembly. *Id.*

Here, the adjudication and disposition order terminating respondent-mother's parental rights was reduced to writing, signed, and entered forty-six days after the hearing, sixteen days after the maximum time limit prescribed by N.C. Gen. Stat. § 7B-1109(e) and § 7B-1110(a). However, respondent does not argue how she or the other parties were prejudiced by the sixteen day delay. Her argument rests solely on the assertion that the delay in entering the order, in violation of N.C. Gen. Stat. § 7B-1109(e) and § 7B-1110(a), was *per se* prejudicial. I agree with the majority's holding that a sixteen day delay, standing alone, is insufficient to warrant a reversal where respondent failed to argue or show prejudice. However, our decision does not condone the delay in entering the adjudication and disposition order beyond the time limits in the statutes. *See In re B.M., M.M., An.M., and Al.M.*, 168 N.C. App. at 355, 607 S.E.2d at 702 (although this Court did not find prejudice, we stated, "[w]e strongly caution against this practice, as it defeats the purpose of the maximum time requirements specified in the statute, which is to provide parties with a speedy resolution of cases where juvenile custody is at issue."). I concur to affirm the trial court's order.