HUNTER, JR., Robert N., Judge.
Respondent, the father of the juveniles A.L., M.L., and A.L., appeals from an order terminating his parental rights. After careful review, we affirm.
I. Factual & Procedural History
A.L., M.L, and A.L. are enrolled or eligible to be enrolled in the Eastern Band Cherokee tribe. On 29 March 2012, Jackson County Department of Social Services ("DSS") filed juvenile petitions alleging that A.L., M.L., and A.L. were neglected juveniles. DSS stated that there were issues concerning inadequate supervision, an inability to meet the basic needs of the juveniles, domestic violence, unstable housing, and substance abuse. The juveniles' maternal grandmother, L.B., had signed a safety plan and kinship plan in October 2011 for the juveniles in which she agreed to care for them and provide supervised visitation with their mother. DSS alleged, however, that L.B. failed to comply with the safety plan and allowed both respondent and the mother to care for the juveniles without supervision. On 23 March 2012, L.B. indicated that she would be going out of town for five days and could not care for the juveniles. On 28 March 2012, DSS obtained non-secure custody of the juveniles. On 1 June 2012, a consent order was entered adjudicating the juveniles as neglected.
On 19 August 2013, the trial court ceased reunification efforts and changed the permanent plan for the juveniles to adoption and termination of parental rights. On 23 August 2013, DSS filed a petition to terminate respondent's and their mother's parental rights.[1] On 15 November 2013, L.B. moved to intervene. The trial court denied L.B.'s motion.
On 11 March 2014, the juveniles' mother voluntarily relinquished her parental rights. On 21 May 2014, the trial court entered an adjudicatory order concluding that grounds existed to terminate respondent's parental rights pursuant to N.C. Gen.Stat. § 7B-1111(a)(1) (neglect) and (a)(2) (failure to correct conditions which led to removal of the juveniles) (2013). On 19 September 2014, the trial court entered a dispositional order in which it determined that it was in the best interests of the juveniles to terminate respondent's parental rights. Accordingly, respondent's parental rights were terminated. Respondent appeals.
II. Analysis
Respondent's sole argument on appeal is that the trial court erred when it denied L.B.'s motion to intervene. The trial court determined that L.B. was "not the Juveniles' parent, guardian, custodian, or caretaker, as defined by N.C.G.S. 7B-401.1 " and thus was "not a person or agency as defined in N.C.G.S. 7B-1103(b) who may move to intervene in a pending abuse, neglect or dependency proceeding." Respondent contends, however, the trial court's failure to comply with the Indian Child Welfare Act ("ICWA") renders the trial court's termination order invalid. See25 U.S.C. § 1914 (2014). We are not persuaded.
"The [ICWA] ... is intended to regulate placement and custody proceedings involving Indian children in order to strengthen and preserve Native American families and culture." In re C.P.,181 N.C.App. 698, 701, 641 S.E.2d 13, 16 (2007) ; see also25 U.S.C. § 1903 et seq. "The [ICWA] provides minimum Federal standards for the removal of Indian children from their families and the placement of such children in foster or adoptive homes which will reflect the unique values of Indian culture." In re A.D.L.,169 N.C.App. 701, 708, 612 S.E.2d 639, 644 (internal quotation marks and citation omitted), disc. review denied,359 N.C. 852, 619 S.E.2d 402 (2005).
"In North Carolina, in order for the [ICWA] to apply, a proceeding must first be determined to be a child custody proceeding as defined by the Act itself, and it must then be determined that the child in question is an Indian child of a federally recognized tribe." In re C.P.,181 N.C.App. at 701, 641 S.E.2d at 16 (citing In re A.D.L.,169 N.C.App. at 708, 612 S.E.2d at 644 ). Respondent, although not the party adversely effected by the denial of L.B.'s motion to intervene, has standing to raise this issue pursuant to 25 U.S.C. § 1914 (2014) (emphasis added), which provides:
Any Indian child who is the subject of any action for foster care placement or termination of parental rights under State law, any parentor Indian custodian from whose custody such child was removed,and the Indian child's tribe may petition any court of competent jurisdiction to invalidate such action upon a showing that such action violated any provision of sections 1911, 1912, and 1913 of this title.
The ICWA grants the Indian custodian of an Indian child the right to intervene in a proceeding to terminate parental rights. 25 U.S.C. § 1911(c) (2014). An "Indian custodian" is defined as "any Indian person who has legal custody of an Indian child under tribal law or custom or under State law or to whom temporary physical care, custody, and control has been transferred by the parent of such child[.]" 25 U.S.C. § 1903(6) (2014). Thus, an individual can become an Indian custodian under the ICWA through formal state law, tribal custom, or through the informal physical transfer of the child by the parent into an individual's care.
Here, Respondent contends that L.B. was an Indian custodian because she had signed a kinship plan in which she agreed to care for the juveniles. There is no evidence in the record that Respondent or the mother ever transferred legal custody of the juveniles to L.B. Consequently, L.B. "could be the children's Indian custodian only by 'tribal custom' or by parental transfer to her of the 'temporary physical care, custody, and control' " of the children. Pam R. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.,185 P.3d 67, 71 (Alaska 2008) (citation omitted). Respondent makes no argument that tribal custom applies in this case. Though the signed kinship agreement can potentially be construed as a temporary transfer of care, custody, and control, it was revoked when L.B. told DSS that she could not take care of the juveniles because she was going out of town.
III. Conclusion
For the foregoing reasons, we conclude that the trial court did not err in denying L.B.'s motion to intervene. Accordingly, we affirm.
AFFIRMED.
Chief Judge McGEE and Judge CALABRIA concur.
Report per Rule 30(e).
Opinion
Appeal by respondent from orders entered 21 May and 19 September 2014 by Judge Roy Wijewickrama in Jackson County District Court. Heard in the Court of Appeals 29 June 2015.

The juveniles' mother is not a party to this appeal.