IN THE SUPREME COURT OF NORTH CAROLINA

No.259A19

Filed 3 April 2020

IN THE MATTER OF: C.J.C.

Appeal pursuant to N.C.G.S. § 7B-1001(a1)(1) from an order entered on 4 April 2019 by Judge Wesley W. Barkley in District Court, Burke County. This matter was calendared for argument in the Supreme Court on 25 March 2020, but was determined on the record and briefs without oral argument pursuant to Rule 30(f) of the North Carolina Rules of Appellate Procedure.

*No brief for petitioner-appellee mother.*

*David A. Perez for respondent-appellant father.*

MORGAN, Justice.

This appeal arises from a private termination of parental rights action between a child's two parents. Respondent, the natural father of C.J.C. (Caleb),[1] appeals from the trial court's order terminating respondent's parental rights to the child. We affirm the determination of the trial court.

---

[1] A pseudonym is used to protect the juvenile's identity and to facilitate the ease of reading.

At the time of Caleb's birth in September 2014, petitioner—Caleb's mother—and respondent were living together. They were not married. The parents ended their relationship in November 2015, after which Caleb resided with petitioner.

Following her separation from respondent, petitioner filed a custody action in District Court, Burke County. In an order entered on 21 March 2016, the trial court incorporated the terms of the parties' Parenting Agreement, and in accordance with the agreement, granted primary physical and legal custody of Caleb to petitioner, with respondent exercising specific visitation rights. Respondent was ordered to pay child support in the sum of $50 per week in an order entered on 16 May 2016.

On 8 March 2017, petitioner and respondent entered into a Consent Order in which respondent was relieved of ongoing child support payments. Petitioner continued to have primary legal and physical custody of Caleb, and respondent was granted visitation with Caleb "as the parties mutually agree."

On 8 October 2018, petitioner filed a petition to terminate respondent's parental rights on the grounds that Caleb was born out of wedlock, and that respondent failed to provide substantial financial support or consistent care with respect to Caleb and petitioner; and that respondent had willfully abandoned Caleb. N.C.G.S. § 7B-1111(a)(5)(d.), (7) (2019). Respondent filed an answer on 31 October 2018, denying that grounds existed to terminate his parental rights.

After multiple continuances, the trial court held a hearing on the petition on 21 March 2019. On 4 April 2019, the trial court entered an order concluding that

grounds existed to terminate respondent's parental rights based on willful abandonment and that termination of respondent's parental rights was in Caleb's best interests[2]. Accordingly, the trial court terminated respondent's parental rights. Respondent appealed.

Respondent first argues that the trial court erred in failing to appoint a guardian ad litem (GAL) for Caleb. Respondent contends that while an attorney advocate was appointed in the matter, nonetheless, this attorney was not appointed in the capacity of GAL, and that the trial court's failure to appoint a GAL in this case is prejudicial error requiring reversal. We reject respondent's argument and conclude that the attorney at issue was appointed to serve as both GAL and attorney advocate for Caleb.

The record here contains the Administrative Office of the Courts Form AOC-J-207—"ORDER TO APPOINT OR RELEASE GUARDIAN AD LITEM AND ATTORNEY ADVOCATE"—filed on 11 December 2018. The preprinted portions of this form note that appointments which appear in the form are made pursuant to N.C.G.S. §§ 7B-601[3] (abuse, neglect, and dependency petitions) and 7B-1108

---

[2] The phrases "best interest" and "best interests" are utilized interchangeably by legal sources which are cited in this opinion. In order to harmonize the usage of this phrase throughout this opinion and in light of the lack of any substantive difference in the terminology, the phrase "best interests" will be employed, even if a quoted source used the alternative terminology.

[3] Pursuant to N.C.G.S. § 7B-607, a GAL for the juvenile *must* be appointed in abuse and neglect cases and *may* be appointed in dependency matters. N.C.G.S. § 7B-601(a) (2017). The instant matter does not fall under section 7B-607.

(termination of parental rights). In termination of parental rights (TPR) proceedings, N.C.G.S. § 7B-1108(b) *requires* the appointment of a GAL for the juvenile where a respondent parent denies material allegations in the TPR petition. N.C.G.S. § 7B-1108(b) (2017) ("If an answer or response denies any material allegation of the petition or motion, the court shall appoint a guardian ad litem for the juvenile to represent the best interests of the juvenile . . . ."). In addition, this subsection provides that "[a] licensed attorney shall be appointed to assist those guardians ad litem *who are not attorneys licensed to practice in North Carolina." Id.* § 7B-1108(b) (emphasis added). In other words, where a respondent parent files an answer denying material allegations in the petition as Caleb's father has done in the present case, the trial court (1) must appoint a GAL for the juvenile, and (2) must appoint a licensed attorney (or "attorney advocate") if the appointed GAL is not an attorney licensed to practice in this state. In conformance with these statutory provisions, there are sections on Form AOC-J-207 to designate a GAL and to designate an attorney advocate. In the space where an attorney advocate's name is to appear, there is a box to be checked if "Attorney Advocate is also acting as Guardian ad Litem."

In the instant case, the information entered on the Form AOC-J-207 displays the name "Steve Cheuvront" in the space to designate an "Attorney Advocate" and leaves blank the document's section for a GAL. The district court judge who signed the form failed to check the box denoting that the designated attorney advocate Cheuvront was also acting as the guardian ad litem. However, a review of the other

documents and transcripts in the record on appeal plainly indicates that this failure of the district court judge to check the GAL box was merely a clerical error, not a prejudicial substantive or procedural error. *See In re A.D.L.*, 169 N.C. App. 701, 707, 612 S.E.2d 639, 643 (stating that where "the [GAL] carried out her respective duties, failure of the record to disclose [GAL] appointment papers does not necessitate reversal of the district court's decision"), *disc. review denied*, 359 N.C. 852, 619 S.E.2d 402 (2005). For example, Cheuvront is referred to as "the Guardian ad Litem," both in the written adjudication and disposition order, as well as on the cover page of both the hearing and trial transcripts. The transcript contains an exchange on 13 December 2018 between the trial court and respondent's trial counsel during which counsel explained the need to continue a hearing because "Mr. Cheuvront was appointed as guardian ad litem yesterday." On 10 January 2019, the transcript shows that there was a discussion among the parties and the trial court about another continuance in which respondent's trial counsel mentioned that "the guardian ad litem" had not yet been able to meet with him.

At the hearing on the TPR petition when the trial court called the matter on 21 March 2019, it noted, "All parties are present. We have Mr. Cheuvront, who's guardian ad litem in this matter. Anything before we begin the hearing from the petitioner?" Neither respondent nor his counsel expressed any concerns or raised any issues regarding Cheuvront's role as GAL during the TPR hearing. After the parties presented their evidence, the trial court asked Cheuvront, "[a]s guardian ad litem in

this matter," if Cheuvront had anything to add to assist the trial court in making its decision. Cheuvront then provided an account of his interactions with the parties and with Caleb. Again, neither respondent nor his trial counsel registered any question or matter about Cheuvront's role as GAL in the case. It is clear from the record and transcript that the trial court did, in fact, appoint Cheuvront as GAL for Caleb. Respondent's contention to the contrary, based on an apparent clerical error, is without merit.

Respondent also contends that Cheuvront did not fulfill the duties of a GAL because Cheuvront failed to "offer evidence and examine witnesses at adjudication" and "explore options with the court at the dispositional hearing." N.C.G.S. § 7B-601 (2019). Section 7B-601(a) of our General Statutes provides that

> [t]he duties of the guardian ad litem program shall be to make an investigation to determine the facts, the needs of the juvenile, and the available resources within the family and community to meet those needs; to facilitate, when appropriate, the settlement of disputed issues; to offer evidence and examine witnesses at adjudication; to explore options with the court at the dispositional hearing; to conduct follow-up investigations to insure that the orders of the court are being properly executed; to report to the court when the needs of the juvenile are not being met; and to protect and promote the best interests of the juvenile until formally relieved of the responsibility by the court.

N.C.G.S. § 7B-601(a). "[I]f the GAL is an attorney, that person can perform the duties of both the GAL and the attorney advocate." *In re J.H.K.*, 365 N.C. 171, 175, 711 S.E.2d 118, 120 (2011). Here, Cheuvront investigated the case prior to the

termination hearing by contacting the parties, visiting the child Caleb at petitioner's home, and going to petitioner's workplace. As noted above, Cheuvront reported his observations to the trial court at the TPR hearing. Cheuvront competently fulfilled his role as guardian ad litem—a status which was unquestioned and unchallenged upon repeated references to Cheuvront's role in this regard—and the trial court's clerical oversight in its execution of Form AOC-J-207 regarding its failure to check the GAL designation box for the person whom it properly designated on the same form to serve as Attorney Advocate was not prejudicial error. Consequently, we are not persuaded by this argument.

In his second contention, respondent asserts that the trial court abused its discretion by concluding that it would be in Caleb's best interests to terminate respondent's parental rights. Specifically, respondent claims that the trial court failed to make sufficient findings regarding the factors set forth in N.C.G.S. § 7B-1110(a) and did not properly balance those factors.

Once the trial court finds that at least one ground exists to terminate parental rights pursuant to N.C.G.S. § 7B-1111(a), it proceeds to the dispositional stage where it must "determine whether terminating the parent's rights is in the juvenile's best interest[s]" based on the following factors:

> (1) The age of the juvenile.
>
> (2) The likelihood of adoption of the juvenile.
>
> (3) Whether the termination of parental rights will aid in

the accomplishment of the permanent plan for the juvenile.

(4) The bond between the juvenile and the parent.

(5) The quality of the relationship between the juvenile and the proposed adoptive parent, guardian, custodian, or other permanent placement.

(6) Any relevant consideration.

N.C.G.S. § 7B-1110(a) (2019).

"The district court's assessment of a juvenile's best interest at the dispositional stage is reviewed only for abuse of discretion. Abuse of discretion results where the court's ruling is manifestly unsupported by reason or is so arbitrary that it could not have been the result of a reasoned decision." *In re A.R.A.*, 373 N.C. 190, 199, 835 S.E.2d 417, 423 (2019) (internal citation, quotation marks, and brackets omitted).

Here, the trial court made the following findings of fact in determining that termination of respondent's parental rights was in Caleb's best interests:

> 1.      That the [c]ourt has the authority to terminate the parental rights of the Respondent pursuant to the findings of fact and conclusions of law. As to best interests, the [c]ourt has previously found grounds for termination exist and as to this portion, the [c]ourt has considered all those factors that are under the statute, particularly focusing on the age of [Caleb] . . . [who is] 4½ years old. He's been in one family care unit his entire life, with that particularly being with the mother. For the last two years he's only known one parent caretaker, that being the Petitioner/mother. As found with grounds, the Respondent/father has been minimally involved even prior to the filing of this Petition. Therefore, he essentially has no bond at all with the child. If there is a bond it is very

tenuous, particularly the fact that he's had no contact with the child directly since 2017. He's also provided, as indicated, no maintenance, love, support, affection. He's made a couple of contacts with the mother.

2.      Certainly the [c]ourt does find that the family of the father is concerned for the child and does show some genuine care for the child. However, essentially the [c]ourt is looking at the child's best interest[s] in regards to the father and his situation and, while [respondent's attorney] does make a point that termination essentially doesn't change what's happening as we sit here today, the [c]ourt is going to find that it's in the best interest[s] due to the fact that this young child does need some consistency and needs to as the statute requires develop a bond of significance. I agree that we are not in a position to anticipate adoption given where we are right now; however, the lack of any bond with the father, the young age of the child, and the fact that a termination of parental rights would assist in achieving a consistency along with the factors that were found in the adjudication, the [c]ourt will grant the order of termination and find that termination of the Respondent's rights are in [Caleb's] best interests.

Respondent has not challenged these findings, and therefore, they are binding on appeal. *In re E.H.P.*, 372 N.C. 388, 395, 831 S.E.2d 49, 54 (2019) (citing *Koufman v. Koufman*, 330 N.C. 93, 97, 408 S.E.2d 729, 731 (1991)). On the other hand, respondent argues that the trial court failed to make sufficient findings regarding the factors set forth in N.C.G.S. § 7B-1110(a). Specifically, he contends that the trial court failed to make findings addressing petitioner's relationship with her boyfriend, Clayton Dennis[4], and the quality of Caleb's relationship with petitioner's boyfriend.

---

[4] A pseudonym is again employed to protect the juvenile's identity due to the

Although the trial court must consider all of the factors in N.C.G.S. § 7B-1110(a), it "is only required to make written findings regarding those factors that are relevant." *In re A.R.A.*, 373 N.C. at 199, 835 S.E.2d at 424. "[A] factor is relevant if there is conflicting evidence concerning the factor, such that it is placed in issue by virtue of the evidence presented before the [district] court[.]" *Id.* (citation and internal quotation marks omitted) (second and third alteration in original).

There was no conflict in the evidence regarding either petitioner's or Caleb's relationship with Clayton Dennis that would require the trial court to make specific findings. Both petitioner and Dennis testified that although they were not engaged to be married at the time of the hearing, they had been dating for two years and planned to get married. Dennis testified that his relationship with Caleb was "awesome" and that Caleb "just wants to be around [him]"; petitioner testified that Caleb has benefitted from his relationship with Dennis. Both petitioner and Dennis offered testimony that Dennis was like a father figure for Caleb and did "what a father figure should do." Respondent reasons that if the plan was for Dennis to adopt Caleb in the future, then the trial court failed to make any findings regarding how termination of parental rights would aid such a plan. Aside from the fact that the private nature of this termination proceeding means that there is no permanent plan as that term is used in N.C.G.S. § 7B-1110(a)(3), respondent acknowledges in his brief

---

relationship of "Clayton Dennis" with the juvenile's mother.

that the trial court observed that it could not anticipate adoption at the time of the hearing, since petitioner and her boyfriend Dennis had not set a wedding date. Consequently, the factor of petitioner's relationship with Clayton Dennis was not sufficiently relevant to require the trial court to make findings concerning the impact of said relationship on termination of respondent's parental rights or on the adoption of Caleb.

Finally, respondent argues that the trial court improperly balanced the factors set forth in N.C.G.S. § 7B-1110(a) and abused its discretion in determining that termination of respondent's parental rights was in Caleb's best interests. He deduces that since the trial court found that it was "not in a position to anticipate adoption given where we are right now[,]" it therefore implicitly found that there was not a likelihood of adoption in the future. Respondent further asserts that because Dennis was not in a position to adopt Caleb, termination of respondent's parental rights "accomplished *nothing* except to make another child fatherless[,]" and that termination "legally destroyed" valuable relationships with paternal family members without creating a new paternal relationship. In our view, the trial court's findings demonstrate that it considered the factors set forth in N.C.G.S. § 7B-1110(a) and determined that Caleb's young age, the child's lack of any bond with respondent, and the child's need for consistency—combined with respondent's lack of involvement with the child—supported a finding that termination of respondent's parental rights was in Caleb's best interests. Although the trial court found that it was "not in a

position to anticipate adoption[,]" this is only one factor which the trial court must consider. This factor becomes more relevant in a TPR case in which a child is in the custody of a Department of Social Services agency and termination of the parent's rights leaves the child as a ward of the State. The present case, however, involves a private termination of parental rights initiated by the child's mother, who had full custody of the child at the time of the TPR hearing. Therefore, the likelihood of Caleb's potential adoption under this set of circumstances is not a sufficiently relevant factor as respondent depicts it in determining whether termination of respondent's parental rights was in Caleb's best interests.

Based on the foregoing analysis, this Court is satisfied that the trial court's conclusion that termination of respondent's parental rights was in Caleb's best interests was neither arbitrary nor manifestly unsupported by reason. Therefore, we affirm the trial court's order terminating respondent's parental rights.

AFFIRMED.