595 S.E.2d 167 (2004)
In the Matter of E.N.S., DOB: 2/25/02.
No. COA03-718.
Court of Appeals of North Carolina.
May 4, 2004.
*168 W.A. Holland and Jennifer S. O'Connor, Smithfield, for petitioner-appellee Johnston County Department of Social Services.
James D. Johnson, Jr., Benson, for Guardian ad Litem.
Katharine Chester, Siler City, for respondent-appellant.
HUNTER, Judge.
Respondent mother appeals both an adjudication order and disposition order concluding that her minor child, E.S., was a neglected and dependent juvenile whose best interests would be served by remaining in the custody of the Johnston County Department of Social Services ("JCDSS").[1] For the reasons stated herein, we affirm.
On 25 February 2002, respondent, then sixteen years of age, gave birth to E.S. while in the custody of JCDSS. E.S. was her second child, respondent having given birth to another son, R.S., when she was fourteen. At the time of E.S.' birth, respondent was living at PORT, a treatment facility for drug and alcohol abuse. However, PORT did not have accommodations for its patients' minor children, and JCDSS did not have another available placement that could provide the treatment and care respondent and E.S. needed. Therefore, due to respondent's inability to develop a plan of care for E.S., JCDSS took custody of the juvenile on the day he was born. A juvenile petition was filed on that same day alleging E.S.' dependency.
On 28 February 2002, JCDSS amended its juvenile petition to include allegations of neglect in that E.S. "live[d] in an environment injurious to the juvenile's welfare." Facts listed by JCDSS to support the neglect allegations were as follows:
The juvenile's mother, [respondent], is a minor and is currently residing in a residential treatment facility and is not capable of providing care for the juvenile while residing in this facility. [JCDSS] has been working with [respondent] on or about November 1999 regarding [respondent's] first child. [Respondent's] first child was removed from her custody in 11/99. The first child was adjudicated as being neglected and dependent by [respondent] in that [respondent] failed to ensure that the child was properly fed. On or about November 2000, the Court ordered that DSS no longer had to work toward reunifying [respondent] with her oldest child. [Respondent] failed to make significant progress in addressing her neglect issues and she failed to show an interest in providing care for the juvenile. The juvenile's alleged father is unknown and no one has come forward at this time to claim paternity of this juvenile. [Respondent] has stated *169 she does no[t] know the identity of the father. Therefore, this juvenile is an environment injurious to her [sic].
The adjudication hearing was held on 3 April 2002. At the call of the case, respondent informed the trial court that she would consent to an adjudication of dependency only. JCDSS did not accept the stipulation, and the hearing commenced. After the presentation of the evidence, the court concluded that E.S. was a dependent and neglected juvenile. Findings of fact supporting that conclusion included, inter alia:
[Respondent] has been discharged from PORT, the drug and alcohol treatment facility as of March 28, 2002. She has been placed in a therapeutic foster care home. The minor child, [E.S.], continues to reside in a licensed foster care home. The Court finds that he is gaining weight and is appropriately progressing. The JCDSS has continued to explore relative placement without success.
[Respondent] had three weekend visits while at PORT. These weekend visits were attempts to recommit her to the local community and were arranged at her grandmother's home. During all three of these visits she violated curfews by spending the night away from her grandmother's home. The mother also admitted taking a sleeping pill and upon returning to PORT, tested positive for THC. The Court finds from this evidence that the mother had [been] given an opportunity to establish a home with her grandmother and present an understanding [of] following rules in the home so that she could develop the skills to maintain and manage her own child. The mother's failure to stay in the place provided and decision to violate both the curfew and the substance problems constitutes neglect in that the mother has not demonstrated that she can supervise and control an infant. The Court further finds that the child is a dependent child and that the mother has no money, no source of income, no place to live and has demonstrated an inability to remain in placements where she could care for the minor infant.
The case immediately proceeded to disposition whereby the trial court concluded that E.S.' best interests would be served by remaining in the custody of JCDSS. A supervised visitation plan for respondent was also approved that was contingent upon respondent complying with her family services case plan. Respondent and the guardian ad litem appeal.[2]

I.
Respondent argues the trial court's adjudication order should be reversed because she did not neglect E.S. within the meaning of N.C. Gen.Stat. § 7B-101 (2003). The relevant portion of this statute provides:
Neglected juvenile.A juvenile who does not receive proper care, supervision, or discipline from the juvenile's parent, guardian, custodian, or caretaker; or who has been abandoned; or who is not provided necessary medical care; or who is not provided necessary remedial care; or who lives in an environment injurious to the juvenile's welfare; or who has been placed for care or adoption in violation of law.
N.C. Gen.Stat. § 7B-101(15) (emphasis added). Respondent contends that since E.S. was taken from respondent immediately following his birth and before either of them had left the hospital, the trial court erred in concluding E.S. was living in an environment injurious to the juvenile's welfare. We disagree.
"In a non-jury neglect adjudication, the trial court's findings of fact supported by clear and convincing competent evidence are deemed conclusive, even where some evidence supports contrary findings." In re Helms, 127 N.C.App. 505, 511, 491 S.E.2d 672, 676 (1997). Also, in determining whether a parent has neglected a juvenile, a prior adjudication of neglect involving that parent is a relevant factor to consider, and "the trial judge [is afforded] some discretion in determining the weight to be given such evidence." In re Nicholson and Ford, 114 N.C.App. 91, 94, 440 S.E.2d 852, 854 (1994). See also N.C. Gen.Stat. § 7B-101(15).
*170 In the case sub judice, the trial court's adjudication of neglect was based primarily on events that took place before E.S.' birth, in particular, the circumstances regarding respondent's oldest child being adjudicated neglected and dependent on 27 January 2000. The trial court further found that following that prior adjudication, respondent continued to demonstrate behavior that evidenced she would neglect E.S. That evidence established that while in the PORT program and prior to E.S.' birth, respondent was allowed three weekend visits with her grandmother. The purpose of those visits was to ensure that respondent could show a change in previous patterns of instability, give her an opportunity to live with R.S.[3], and determine if respondent could abide by established house rules. The first visit took place around Thanksgiving of 2001, and respondent disappeared for six hours without permission. The second visit took place around Christmas of 2001, and respondent behaved appropriately. The third visit took place in February of 2002 (approximately two weeks before E.S.' birth), and respondent stayed out all night without permission.
After E.S. was born, the evidence revealed that respondent's behavior did not improve. Shortly after E.S.' birth, respondent resumed visits with her grandmother with the following results: (1) on 15 March 2002, respondent violated her established curfew and took a sleeping pill, which was considered a violation of PORT's policy against taking drugs of any kind; and (2) in early April of 2002, respondent had another visit with her grandmother, stayed out all night again, and smoked marijuana. Thereafter, respondent was discharged from PORT because her PORT counselor felt that the program could offer respondent no further assistance. While her discharge was not technically considered an unsuccessful completion of the program, additional evidence established that respondent "still struggles with substance abuse."
"In cases of this sort, the decision of the trial court must of necessity be predictive in nature, as the trial court must assess whether there is a substantial risk of future abuse or neglect of a child based on the historical facts of the case." In re McLean, 135 N.C.App. 387, 396, 521 S.E.2d 121, 127 (1999). Here, the trial court carefully weighed and assessed the evidence regarding a past adjudication of neglect and the likelihood of its continuation in the future before concluding that E.S. would be at risk if allowed to remain with respondent. "Because the neglect statute `affords the trial judge some discretion in determining the weight to be given such evidence,' we hold that the findings of fact taken in their entirety are sufficient to support the conclusion that [E.S.] was a neglected child." Id. This assignment of error is overruled.

II.
Respondent argues the trial court failed to make appropriate findings of fact and conclusions of law. We disagree.
"In all actions tried upon the facts without a jury or with an advisory jury, the court shall find the facts specially and state separately its conclusions of law thereon and direct the entry of the appropriate judgment." N.C.R. Civ. P. 52(a)(1). "Findings of fact are defined as `[d]eterminations from the evidence of a case ... concerning facts averred by one party and denied by another.' Conclusions of law are defined as `[f]inding[s] by [a] court as determined through [the] application of rules of law.' " In re Johnston, 151 N.C.App. 728, 731, 567 S.E.2d 219, 221 (2002) (citations omitted). "If the trial court's findings of fact are supported by competent evidence, and they support its conclusions, they are binding on appeal." Id.
Testimony was offered by two child placement workers, a child protective service investigator, and respondent. From their testimony, the trial court found respondent had demonstrated behavior inconsistent with caring for a child such as running away from child placements, violating established curfews, and failing to develop a connection or demonstrate a willingness to provide any *171 parenting skills to her oldest child that would have assisted her with the supervision and control of E.S. These findings were clearly distinguished from the court's conclusions that E.S. was a dependent and neglected juvenile as designated by the titles "Findings of Fact" and "Conclusions of Law" in the adjudication order. See id. at 732, 567 S.E.2d at 221 (holding that the trial court's findings of fact and conclusions of law must be distinguishable in the order in some recognizable fashion). Moreover, while respondent may contend that some of the findings were inaccurate and thus, did not support the conclusions of law, we have carefully reviewed the record and found competent evidence indicating otherwise.
Nevertheless, respondent contends the trial court erred by not orally stating at the adjudication hearing whether "the allegations in the petition have been proven by clear and convincing evidence[]" pursuant to N.C. Gen.Stat. § 7B-807(a) (2003). While the trial court did not make such an oral statement, neither statutory authority nor case law require the court to do so. However, there is clear case law that holds the order of the trial court must affirmatively state the standard of proof utilized. See In re Church, 136 N.C.App. 654, 525 S.E.2d 478 (2000). The first page of the trial court's adjudication order did state: "For purposes of adjudication, the Court finds ... the following facts have been proven by clear and convincing evidence...." That statement satisfies N.C. Gen.Stat. § 7B-804. Morever, the statement in the adjudication order disproves another contention of respondent's that the order failed to clearly state the requisite standard of proof.
Next, respondent contends the trial court confused matters by entering an amended juvenile adjudication order before the original order. For reasons not clearly denoted in the record, the amended adjudication order was filed on 8 May 2002, several days before the original order was filed on 14 May 2002. Yet, despite the original order being inadvertently filed on a later date, respondent's notice of appeal clearly stated that she was "appealing the amended Adjudication Order...." Thus, whether or not respondent had seen the original adjudication order at that time, she knew the order from which she was appealing had either added, deleted or rephrased the content of the original order. See The American Heritage College Dictionary 42-43 (3rd ed.1997).
The remainder of respondent's contentions with respect to this second argument are completely without merit and warrant no further discussion. Accordingly, we conclude the trial court made appropriate findings of fact and conclusions of law.

III.
Finally, respondent argues the trial court's decision should be reversed because it failed to timely enter the adjudication and disposition orders. We conclude the trial court's failure to timely enter the orders did not prejudice defendant.
Chapter 7B of our statutes governs the filing of adjudication and disposition orders. Specifically, an adjudication order "shall be reduced to writing, signed, and entered no later than 30 days following the completion of the hearing." N.C. Gen.Stat. § 7B-807(b) (emphasis added). Likewise, a disposition order "shall be in writing, signed, and entered no later than 30 days from the completion of the hearing...." N.C. Gen.Stat. § 7B-905(a) (2003) (emphasis added).
Here, the adjudication and disposition hearing took place on 3 April 2002. The adjudication order was filed on 8 May 2002, and the disposition order was filed on 14 May 2002, both of which occurred after the thirty-day statutory time period. Respondent cites several cases in which this Court held that "use of the language `shall' is a mandate to trial judges, and that failure to comply with the statutory mandate is reversible error." In re Eades, 143 N.C.App. 712, 713, 547 S.E.2d 146, 147 (2001). See also In re Estes, 157 N.C.App. 513, 579 S.E.2d 496, disc. review denied, 357 N.C. 459, 585 S.E.2d 390 (2003). However, none of those cases involved the untimeliness of orders, nor do the statutes at issue address the repercussions associated with untimely filing these types of orders.
The General Assembly added the thirty-day filing requirement to these statutes in *172 2001. See 2001 Sess. Laws 2001-208, § 17. While we have located no clear reasoning for this addition, logic and common sense lead us to the conclusion that the General Assembly's intent was to provide parties with a speedy resolution of cases where juvenile custody is at issue. Therefore, holding that the adjudication and disposition orders should be reversed simply because they were untimely filed would only aid in further delaying a determination regarding E.S.' custody because juvenile petitions would have to be re-filed and new hearings conducted.
Further, although the order was not filed within the specified time requirement, respondent cannot show how she was prejudiced by the late filing. See In re Humphrey, 156 N.C.App. 533, 538, 577 S.E.2d 421, 426 (2003) (citation omitted) (holding the respondent failed to demonstrate how she was prejudiced by petitioner's failure to comply with N.C. Gen.Stat. § 7B-1104's requirement that a petition or motion for termination of parental rights shall state that it " `has not been filed to circumvent the provisions of ... the Uniform Child Custody Jurisdiction and Enforcement Act'"). The record shows that respondent's right to visitation with E.S. was not affected by the untimely filings nor was her right to appeal the orders. Thus, the trial court's failure to file the adjudication and disposition orders within thirty days amounted to harmless error and is not grounds for reversal.
Affirmed.
Judges WYNN and TYSON concur.
NOTES
[1] The guardian ad litem also filed notice of appeal in this matter, but submitted no brief to this Court.
[2] Respondent is the only party that filed a brief on appeal.
[3] After being adjudicated neglected and dependent, R.S. was placed in the custody of a maternal great-aunt. R.S. and his great-aunt were residing in the home of the great-aunt's mother (respondent's grandmother) during respondent's visits.