661 S.E.2d 313 (2008)
In the Matter of A.S.
No. COA07-1242.
Court of Appeals of North Carolina.
June 3, 2008.
No brief filed on behalf of petitioner-appellee.
Annick Lenoir-Peek, San Antonio, TX, for respondent-appellant.
*315 North Carolina Guardian ad Litem Program, by Pamela Newell Williams, Raleigh, for guardian ad litem.
GEER, Judge.
Respondent mother appeals from the district court's adjudication and dispositional order adjudicating her minor child as neglected. We affirm the trial court's adjudication of neglect, but we cannot determine from the order the precise disposition of the trial court; which facts it found in support of the disposition; or its reasoning in making that disposition. We must, therefore, vacate the disposition portion of the order and remand for further findings of fact and conclusions of law and clarification of the decretal portion of the order.

Facts
Respondent presently has four minor children: "Teresa," "David," "Isaac," and "Adam."[1] This appeal relates only to Adam. On 22 December 2006, DSS received information that Teresa had sustained second degree burns on her feet. Respondent claimed to the social worker that she had boiled water for a medicinal bath and left the pot of water on the bottom step of the bathtub. She then took Teresa out of the bathtub and put her to bed. According to respondent, shortly thereafter, she heard Teresa crying in the bathroom, and when she went into the room, she found Teresa "hopping up and down" in the pot of boiling water.
When, however, Teresa was examined at the UNC Hospital's Burn Center, the hospital staff informed DSS that her burn patterns were not consistent with an accidental burning. The doctors believed instead that her unusual burn patterns were consistent with an intentional immersion burning, and the absence of any splash marks indicated that Teresa's burns were not the result of an accident.
Respondent was arrested on 11 June 2007 and charged with felony child abuse based on Teresa's burns. Teresa, Isaac, and David were removed from her home. Teresa was subsequently adjudicated abused, and Isaac and David were adjudicated neglected.
On 16 June 2007, respondent gave birth to Adam. On 18 June 2007, before Adam was taken home from the hospital, DSS completed a petition alleging that Adam was neglected. DSS alleged that because of the burns Teresa had received, it could not ensure the safety of the child without court intervention and, as a result, Adam lived in an environment injurious to his welfare.
Because all of the district court judges were away at a summer conference, DSS presented its petition and its request for nonsecure custody to a magistrate. The magistrate ultimately wrote at the top of the petition: "filed by mag Sam Hunt 6-18-07 2:05 pm." Also on 18 June 2007, the magistrate entered an order for nonsecure custody, placing Adam in DSS' custody.
On 27 June 2007, a district court judge conducted a hearing under N.C. Gen.Stat. § 7B-506 (2007) to determine the need for continued nonsecure custody of the child. In an order entered 24 July 2007, the court found that remaining in the home would be contrary to the best interest of the child; that efforts to prevent the need for placement were precluded by immediate threat of harm to the child; and that there was a reasonable factual basis to believe that the allegations in the petition were true. The court, therefore, ordered that Adam remain in the nonsecure custody of DSS.
The court conducted the initial adjudication hearing on 25 July 2007. In its order, entered 24 August 2007, the court found that Teresa suffered burns on her feet that appeared, according to the UNC Hospital's Burn Center, to be intentional immersion burns. The court further found that the Burn Center social worker indicated that the unusual burn pattern did not seem consistent with the mother's account of how Teresa burned her feet. The court then found that "the mother's explanation is not consistent with the injury" and that "because of the burns [Teresa] received to her feet on 12-22-06, [DSS] cannot ensure the safety of the *316 children without court intervention." Based on the court's findings of fact, the court adjudicated Adam neglected as defined by N.C. Gen.Stat. § 7B-101(15) (2007).
Respondent filed a notice of appeal from the court's order on 27 August 2007. Subsequently, on 3 December 2007, the guardian ad litem ("GAL") served respondent with a motion to dismiss the appeal on the ground that respondent had not signed the notice of appeal as required by Rule 3A of the Rules of Appellate Procedure; the motion was filed in this Court on 19 December 2007. On 18 December 2007, respondent filed a petition for writ of certiorari seeking review despite the defective notice of appeal.

I
As a preliminary matter, we address the GAL's motion to dismiss and respondent's petition for writ of certiorari. The GAL contends that respondent's appeal must be dismissed because respondent failed to sign the notice of appeal as required by Rule 3A, which states: "If the appellant is represented by counsel, both the trial counsel and appellant must sign the notice of appeal[.]" N.C.R.App. P. 3A(a).
This Court recently held: "Rule 3A is . . . jurisdictional, and if not complied with, the appeal must be dismissed." In re L.B., ___ N.C.App. ___, ___, 653 S.E.2d 240, 244 (2007). Because the notice of appeal contained in the record on appeal is not signed by respondent mother, we must grant the GAL's motion to dismiss this appeal.
Nevertheless, N.C.R.App. P. 21(a)(1) provides that a "writ of certiorari may be issued in appropriate circumstances by either appellate court to permit review of the judgments and orders of trial tribunals when the right to prosecute an appeal has been lost by failure to take timely action. . . ." We believe that this is an appropriate case in which to exercise our discretion and allow respondent's petition for writ of certiorari. Although the order at issue involves only an initial adjudication of neglect, the disposition could be read as ordering DSS to cease reunification efforts with respondenteffectively, a termination of respondent's parental rights less than three months after the birth of Adam. The error depriving this Court of jurisdiction appears to be due to trial counsel's mistake regarding the requirements of the Rules of Appellate Procedure. Given the serious consequences of the adjudication order, the lack of any evidence that respondent contributed to the error, and the need to resolve the ambiguity in the order's disposition, as discussed below, we believe that review pursuant to a writ of certiorari is appropriate.

II
Respondent first argues that the trial court lacked subject matter jurisdiction because the petition was not properly filed. Respondent points to the provision of the Juvenile Code stating that "[a]n action is commenced by the filing of a petition in the clerk's office when that office is open or by the issuance of a juvenile petition by a magistrate when the clerk's office is closed, which issuance shall constitute filing." N.C. Gen. Stat. § 7B-405 (2007). The authority to issue the juvenile petition may be delegated to a magistrate by a district court judge in emergency situations when a petition is required to obtain a nonsecure custody order. N.C. Gen.Stat. § 7B-404(b) (2007). In such situations, the statute requires that the petition be delivered to the clerk's office for processing as soon as the office reopens for business. Id.
Respondent contends that because the clerk's office was open and because "[n]o `filed' stamp is evident on either the juvenile petition or the Non-Secure Custody Order granted by the Magistrate," the petition necessarily was not filed in compliance with § 7B-405. As respondent notes, however, the magistrate handwrote on the petition: "filed by mag Sam Hunt 6-18-07 2:05 pm." Although respondent argues that this notation indicates that the petition was "issued" by a magistrate even though the clerk's office was open, we disagree.
The record indicates that the petition was in fact filed with the clerk's office on 18 June 2007 as suggested by the magistrate's notation. The summons issued the same day to respondent is signed by a deputy clerk stating *317 that a petition had been filed and a nonsecure custody order entered. See N.C. Gen.Stat. § 7B-406(a) (2007) ("Immediately after a petition has been filed alleging that a juvenile is abused, neglected, or dependent, the clerk shall issue a summons to the parent. . . . A copy of the petition shall be attached to each summons."). Even if the petition was filed after the issuance of the nonsecure custody order, that fact would not deprive the district court of jurisdiction. See In re L.B., 181 N.C.App. 174, 187, 639 S.E.2d 23, 29 (2007) (holding that even though nonsecure custody order and summons were issued before juvenile petition was signed and verified, court gained subject matter jurisdiction upon subsequent signing and verification of petition). Further, on 24 July 2007, the district court entered an Order on Need for Continued Non-Secure Custody that specifically found that the court had jurisdiction over the subject matter of the proceedings because "[a] Petition was filed and an Order for Non-Secure Custody was entered, as the record shows."
The lack of an official "filed" stamp on the petition does not require a conclusioncontrary to the other material in the record that the petition was not filed with the clerk's office and only, according to respondent, "at some point . . . made its' [sic] way to a juvenile file." We, therefore, hold that the district court had subject matter jurisdiction over the petition under N.C. Gen.Stat. § 7B-405.

III
Respondent next argues that the magistrate lacked the authority to issue the 18 June 2007 nonsecure custody order because that authority was not properly delegated to him by the chief district court judge. N.C. Gen.Stat. § 7B-502 (2007) states:
Any district court judge shall have the authority to issue nonsecure custody orders pursuant to G.S. 7B-503. The chief district court judge may delegate the court's authority to persons other than district court judges by administrative order which shall be filed in the office of the clerk of superior court. The administrative order shall specify which persons shall be contacted for approval of a nonsecure custody order pursuant to G.S. 7B-503.
Respondent points out that the administrative order issued in this case on 11 June 2007 authorized the director of DSS to issue nonsecure custody orders rather than the magistrate.
Even assuming, without deciding, that the magistrate lacked authority to enter a nonsecure custody order, respondent has cited no authority suggesting that such a lack of authority stripped the trial court of subject matter jurisdiction over the petition. At most, respondent's argument might support a conclusion that the initial award of custody to DSS on 11 June 2007 was invalid. Nevertheless, the trial court revisited the issue of custody in a hearing on 24 June 2007 and entered an order stating that "pending further hearings, the juvenile shall remain or be placed in the non-secure custody of the Robeson County Department of Social Services." Thus, a proper order of custody existed prior to the district court's entering its adjudication and dispositional order.

IV
Respondent next argues that the trial court violated N.C. Gen.Stat. § 7B-506(a) by failing to hold a hearing for continued nonsecure custody within seven calendar days after entry of the initial nonsecure custody order. The statute specifically states: "No juvenile shall be held under a nonsecure custody order for more than seven calendar days without a hearing on the merits or a hearing to determine the need for continued custody." Id. Here, the record indicates that the initial nonsecure custody order was entered on 18 June 2007 and was set to expire on 25 June 2007. The court did not, however, conduct a hearing on the need for continued nonsecure custody until 27 June 2007.
While respondent asserts that this violation is a "serious error," she does not make any argument as to how she was prejudiced by the two-day delay. It is established, however, that "a trial court's violation of statutory time limits in a juvenile case is not reversible error per se. Rather, we have *318 held that the complaining party must appropriately articulate the prejudice arising from the delay in order to justify reversal." In re S.N.H., 177 N.C.App. 82, 86, 627 S.E.2d 510, 513 (2006) (internal citations omitted).
Respondent also argues that on 27 June 2007, the court simply "continued the non-secure custody hearing to July 25, 2007 since the parties had not been served." While the order states that "this matter is continued upon the request and or consent of all parties," the order also made specific findings that remaining in the home would be contrary to the best interests of the child, that efforts to prevent the need for the child's placement were precluded by an immediate threat of harm to the child, that there was a reasonable factual basis to believe that the allegations in the petition were true, and that DSS had made reasonable efforts to prevent or eliminate the need for the child's placement. Based on those findings, the court then ordered that the child be placed in the custody of DSS and that although a plan to return the children to the parents should be addressed, "it would not be appropriate to return the juvenile to the home and remaining in the home would be contrary to the best interest of the juvenile." Thus, the court specifically determined, based on findings of fact, that custody should be continued in DSS. This assignment of error is, therefore, overruled.

V
Respondent further contends that the trial court erred by failing to appoint a GAL for Adam. When, as here, a juvenile is alleged to be neglected, N.C.Gen.Stat. § 7B-601(a) (2007) provides that "the court shall appoint a guardian ad litem to represent the juvenile."
In this case, the record on appeal contains no order formally appointing a GAL for Adam. The order arising out of the nonsecure custody hearing held on 27 June 2007 stated that the "GAL Staff," without a specifically designated individual, served as GAL on behalf of Adam and that Diane Surgeon appeared as attorney advocate. Nevertheless, the record reveals that as of at least 23 July 2007, Hope Robinson, a GAL volunteer, was serving as the GAL for all four children, including Adam. She submitted a "Guardian Ad Litem Court Report" for Adam's adjudication and disposition hearing held on 25 July 2007 that specifically addressed Adam's current placement, his medical condition, and respondent's attendance at Adam's medical appointments, as well as the GAL's recommendations for all four children that DSS retain custody, that the plan of reunification change to guardianship, and that the children remain in their current placements. The court's adjudication and disposition order asserts that Ms. Robinson appeared at the hearing as Adam's GAL, with Ms. Surgeon present as the GAL's attorney advocate, and that Ms. Robinson submitted a report to the court relating to Adam.
We find this case materially indistinguishable from In re A.D.L., 169 N.C.App. 701, 612 S.E.2d 639, disc. review denied, 359 N.C. 852, 619 S.E.2d 402 (2005). In A.D.L., as in this case, the record on appeal did not include an appointment of a GAL. This Court observed, however, that "except for the initial hearing following the entry of the non-secure order to assume custody of the juveniles in August of 2001, the guardian ad litem was noted as present at each and every hearing prior to and including the TPR hearing where she represented the interest of the children. In addition, the guardian ad litem was named in the TPR petition." Id. at 707, 612 S.E.2d at 643. Based on those facts, this Court held: "It is clear that the guardian ad litem followed her statutory duties under N.C. Gen.Stat. § 7B-601(a) to represent the juveniles in all actions under Chapter 7B. Since the guardian ad litem carried out her respective duties, failure of the record to disclose guardian ad litem appointment papers does not necessitate reversal of the district court's decision." Id.
Here, Ms. Robinson prepared a report that reflected an investigation that complied with her duties as set forth in § 7B-601(a).[2] That *319 report was submitted to the court in connection with the initial adjudication hearing, and Ms. Robinson attended that hearing as Adam's GAL, althoughlike the A.D.L. GALshe did not attend the first hearing after DSS was granted nonsecure custody. Thus, as in A.D.L., "[s]ince the guardian ad litem carried out her respective duties, failure of the record to disclose guardian ad litem appointment papers does not necessitate reversal of the district court's decision." 169 N.C.App. at 707, 612 S.E.2d at 643. We, therefore, overrule this assignment of error.

VI
With respect to the merits of the trial court's adjudication of neglect, respondent first argues that the order was inadequate because the court failed to affirmatively state that the allegations in the petition had been proven by clear and convincing evidence as required by the Juvenile Code. Pursuant to N.C. Gen.Stat. § 7B-807 (2007), the court is required to recite the standard of proof the court relied on in its determination of neglect.
Although the "[f]ailure by the trial court to state the standard of proof applied is reversible error[,] . . . there is no requirement as to where or how such a recital of the standard should be included." In re O.W., 164 N.C.App. 699, 702, 596 S.E.2d 851, 853 (2004) (internal citation omitted) (holding that court sufficiently satisfied the requirement of statement of standard of proof by stating the court "CONCLUDES THROUGH CLEAR, COGENT AND CONVINCING EVIDENCE"). Here, the court's order contains the following language: "FROM THE FOREGOING, THE COURT CONCLUDES THROUGH CLEAR, COGENT AND CONVINCING EVIDENCE:. . . ." We find this language sufficient to meet the requirement of N.C. Gen.Stat. § 7B-807.
Respondent also contends the trial court's neglect adjudication was not supported by sufficient evidence because DSS did not present evidence at the adjudication hearing related to the allegations of the petition, but rather asked the trial court to take judicial notice of facts in the other children's cases. Respondent overlooks the fact that DSS offered into evidence, without objection from either parent, reports submitted by DSS and Ms. Robinson, the GAL. These reports provide evidentiary support for the court's findings of fact regarding Teresa and the other children in the adjudication portion of the order. Since there was no objection by respondent to the admission of these reports or any request that the use of the reports be limited in any way, the reports constitute substantive evidence sufficient to support the trial court's findings of fact. See Raynor v. Odom, 124 N.C.App. 724, 730, 478 S.E.2d 655, 658 (1996) (holding that finding of fact was supported by competent evidence when based on affidavit, report, evaluation, and plan admitted without objection).
In addition, although DSS requested that the trial court take judicial notice of the facts of the other children's cases, it is unclear from the transcript whether the court ever specifically ruled on that request as opposed to simply acknowledging that the request had been made. In any event, neither parent objected to DSS' request or ever made any suggestion to the court that he or she had concerns about the evidentiary approach urged by DSS. Without an objection, respondent did not preserve for appellate review any argument regarding the trial court's consideration of the facts relating to the other children. N.C.R.App. P. 10(b)(1) ("In order to preserve a question for appellate review, a party must have presented to the trial court a timely request, objection or motion, stating the specific grounds for the ruling the party desired the court to make if the specific grounds were not apparent from the context.").
Respondent did, however, argue at trial, as she argues on appeal, that the facts relating to Teresa are insufficient to *320 support a conclusion that Adam is a neglected child. "A proper review of a trial court's finding of neglect entails a determination of (1) whether the findings of fact are supported by `clear and convincing evidence,' and (2) whether the legal conclusions are supported by the findings of fact." In re Gleisner, 141 N.C.App. 475, 480, 539 S.E.2d 362, 365 (2000) (internal citation omitted).
A neglected juvenile is defined as one
who does not receive proper care, supervision, or discipline from the juvenile's parent, guardian, custodian, or caretaker; or who has been abandoned; or who is not provided necessary medical care; or who is not provided necessary remedial care; or who lives in an environment injurious to the juvenile's welfare; or who has been placed for care or adoption in violation of law. In determining whether a juvenile is a neglected juvenile, it is relevant whether that juvenile . . . lives in a home where another juvenile has been subjected to abuse or neglect by an adult who regularly lives in the home.

N.C. Gen.Stat. § 7B-101(15) (emphasis added). In considering the identically-worded statutory predecessor to § 7B-101, this Court held that while this language regarding abuse or neglect of other children "does not mandate" a conclusion of neglect, the trial judge has "discretion in determining the weight to be given such evidence." In re Nicholson, 114 N.C.App. 91, 94, 440 S.E.2d 852, 854 (1994).
When, as is the case with Adam, the juvenile being adjudicated has never resided in the parent's home, "the decision of the trial court must of necessity be predictive in nature, as the trial court must assess whether there is a substantial risk of future abuse or neglect of a child based on the historical facts of the case." In re McLean, 135 N.C.App. 387, 396, 521 S.E.2d 121, 127 (1999). Since the statutory definition of a neglected child includes living with a person who has abused or neglected other children and since this Court has held that the weight to be given that factor is a question for the trial court, the trial court, in this case, was permitted, although not required, to conclude that Adam was neglected based on evidence that respondent had abused Teresa by intentionally burning her. See, e.g., In re P.M., 169 N.C.App. 423, 427, 610 S.E.2d 403, 406 (2005) (affirming adjudication of neglect of one child based on prior adjudication of neglect with respect to other children and ongoing unwillingness to accept responsibility); In re E.N.S., 164 N.C.App. 146, 150, 595 S.E.2d 167, 170 (affirming conclusion of neglect "based primarily on events that took place before [the child's] birth, in particular, the circumstances regarding respondent's oldest child being adjudicated neglected and dependent" and subsequent failure to demonstrate stability), disc. review denied, 359 N.C. 189, 606 S.E.2d 903 (2004).
The dissenting opinion relies upon In re A.K., 178 N.C.App. 727, 637 S.E.2d 227 (2006). In A.K., however, the trial court based its adjudication of neglect on its finding that "A.K. was at `substantial risk of neglect' because of father's failure to acknowledge the cause of C.A.K.'s injuries." Id. at 731, 637 S.E.2d at 229. This Court pointed out, however, that the only evidentiary support for this finding was an order entered nine months earlier. The Court carefully limited its holding in reversing the adjudication of neglect: "Consequently, where the trial court did not accept any formal evidence in addition to its consideration of the prior court orders concerning C.A.K., and the only order concerning C.A.K. that contained findings by the clear and convincing standard of proof was from a hearing occurring many months earlier, the trial court could not, on this record, conclude that `the minor child would be at substantial risk of neglect if placed in the custody of the . . . parents at this time.'" Id. at 732, 637 S.E.2d at 230 (emphasis added).
Thus, in A.K., the neglect adjudication was not based on prior abuse of another child, but rather on a lack of acknowledgment by the fathera circumstance that could have changed over the nine-month period prior to the second child's adjudication. Here, however, the trial court based its adjudication that Adam was neglected on the prior abuse of Teresa six months earlier. If a court finds prior abuse, the existence of that abuse is established and, of course, is not a fact that *321 could alter over time. Indeed, respondent was arrested on 11 June 2007 and charged with felony child abuse, mere days before Adam's birth and less than three months before the adjudication order. While it may be that respondent's response to the allegations of abuse may change, her response was not the basis for the adjudication and any such change in respondent's perspective would only be relevant in subsequent proceedings regarding any continued efforts at reunification. We, therefore, affirm the adjudication that Adam is a neglected child.

VII
Respondent's final argument on appeal concerns the court's dispositional order. Respondent argues that (1) the trial court improperly delegated its fact-finding function by broadly incorporating by reference the DSS and GAL reports, and (2) the court failed to make the findings required by N.C. Gen.Stat. § 7B-507 (2007) to cease reunification efforts. Based upon our review of the trial court's disposition order, we cannot decipher either what the trial court actually found or what the trial court intended to order. We, therefore, must vacate the disposition portion of the order and remand for further findings of fact and conclusions of law.
In the disposition portion of its order, the trial court incorporated by reference each of the DSS and GAL exhibits, including the DSS court report, a family reunification assessment, a family assessment of strengths and needs, and the GAL court report. The court then found:
That the statements set forth in the Court Report of social worker, Sheila Smith[,] are true and the statements set forth in the Court Report of guardian ad litem, Hope Robinson[,] are true and that it is in the best interest of the named juvenile that the recommendations of the Robeson County Department of Social Services adopted [sic] by the Court, legal and physical custody of the named juvenile remain with the Department and change [sic] the plan from reunification to guardianship with a court approved caretaker. Visits are going well, continue visits as long as supervised. Return to Court on August 8, 2007 for a First Review Hearing.
The Court finds that it is contrary to the welfare of the juvenile named and it is not possible for the juveniles to be returned home immediately or within the next six months in full legal custody of their parents and that it is not in the best interest of the juvenile to return home because of the parents['] inability to provide for the care and supervision of the juvenile and the parents['] failure to make reasonable progress in correcting those conditions that led to the removal of the juvenile from their custody.
(Emphasis added.)
Following these findings, the order then recited that the court concluded based on the findings:
The Court finds as a fact that it would be contrary to the welfare of the named juvenile for their [sic] to be a continuation in or return to the juvenile's own home and that if [sic] such action would be contrary to the juvenile's best interest; that the Robeson County Department of Social Services has made reasonable efforts to prevent or eliminate the need for placement for the juvenile as set forth in the court report of the Department of Social Services should [sic] continue to make reasonable efforts to prevent or eliminate the need for placement of the juvenile, and the juvenile's placement and care are the responsibility of the Robeson County Department of Social Services and that agency is to provide and arrange for the foster care or other placement, including relative placement if appropriate, deemed to be in the best interest of the juvenile.
(Emphasis added.) Following this paragraph, the order then stated that based on the foregoing findings of fact/stipulation and agreement of the parties
that the above named juvenile is hereby adjudicated neglected as defined by N.C.G.S. 7B-101(15) and the Court finds and concludes as matters of law that the parents are not presently able to provide adequately for the care and supervision of the named juveniles [sic] and that it is in the best interest of the named juvenile that *322 [his] care, custody and control remain with the Robeson County Department of Social Services and that the Robeson County Department of Social Services should have authority to make any lawful placement, including relative placement if deemed appropriate.
In the decretal portion of the order, the court reiterated its neglect adjudication and its determination that legal custody should be awarded to DSS with DSS having authority to make any lawful placement, including relative placement. The order also granted DSS authority to arrange and sign for any health care treatment or evaluation in the interest of the child and ordered respondent to attend parenting classes, complete a psychological test, and "participate [sic] and follow all recommendations." Finally, the court stated "[t]hat this Court orders and adopts the recommendations listed in the findings of fact."
Thus, in the findings of fact, the court appeared to adopt the DSS and GAL recommendation that the plan change from reunification to guardianship. On the other hand, in the conclusion of law section of the order, the court appears to require DSS to continue with reunification efforts. Finally, in the decretal portion the court makes no reference to the plan or whether reunification efforts should cease. The order does place requirements on respondent that would appear to be unnecessary if reunification efforts were to cease.[3] The concluding provision adopting "the recommendations listed in the findings of fact," however, may refer to the recommended change of plan from reunification to guardianship.
Thus, we must remand for clarification of what the trial court intended. On remand, the trial court should specify not only what it is ordering, but also the specific facts and reasoning upon which that order is based. As this Court has explained:
In juvenile proceedings, it is permissible for trial courts to consider all written reports and materials submitted in connection with those proceedings. Despite this authority, the trial court may not delegate its fact finding duty. Consequently, the trial court should not broadly incorporate these written reports from outside sources as its findings of fact.
In re J.S., 165 N.C.App. 509, 511, 598 S.E.2d 658, 660 (2004) (internal citations omitted). In this case, the trial court did not err when, while summarizing the evidence considered by the court, it incorporated the DSS and GAL reports by reference rather than specifically describing the content of those reports.
The court was, however, required to make its own findings of fact based on those reports and any testimonial evidence presented. The trial court's bare finding that "the statements set forth" in the reports "are true" does not tell this Court upon which assertions in those reports the trial court was relying. Compare L.B., 181 N.C.App. at 193, 639 S.E.2d at 33 ("We hold that the trial court properly incorporated DSS and guardian ad litem reports and properly made findings of fact, included in the permanency planning order, based on these reports. Moreover, these findings are sufficient to support the trial court's ultimate determination, and there is no evidence that [the trial court] relied on information from the reports that he then failed to include as a finding of fact in his order.").
While the trial court's order did include findings reciting in conclusory fashion that Adam could not be returned to his parents within the next six months "in full legal custody" because of the parents' inability "to provide for the care and supervision of the juvenile and the parents['] failure to make reasonable progress in correcting those conditions that led to the removal of the juvenile from their custody," there is no finding of fact identifying the conditions on which both parents had failed to progress. The language appears to be boilerplate that, without further clarification, does not necessarily apply to the specific circumstances of this case.[4] *323 Accordingly, on remand, the trial court must clarify its disposition; must specify which statements in the reports it is finding as a fact; and must make findings of fact specifically relating to Adam that support its disposition. See J.S., 165 N.C.App. at 513, 598 S.E.2d at 661 ("Since the trial court's findings are not sufficiently specific to allow this Court to review its decision and determine whether the judgment was correct, and since the findings also fail to comply with the statutory requirements, we remand this matter to the district court to make appropriate findings of fact.").
Affirmed in part; vacated and remanded in part.
Judge JACKSON concurs.
Judge TYSON concurs in part and dissents in part in a separate opinion.
TYSON, Judge concurring in part and dissenting in part.
The majority's opinion grants the GAL's motion to dismiss respondent's appeal based upon respondent's failure to sign the notice of appeal as required by Rule 3A of the North Carolina Rules of Appellate Procedure. The majority's opinion then holds that this is an appropriate case to grant respondent's petition for writ of certiorari pursuant to Rule 21. I concur to grant respondent's petition for writ of certiorari and reach the merits of respondent's appeal.
The majority's opinion further holds the trial court properly concluded that A.S., a newborn infant, was a neglected juvenile based upon evidence of a single instance of prior abuse to A.S.'s sibling. I disagree and vote to reverse the trial court's adjudication order. I respectfully dissent.

I. Standard of Review
"At the adjudication stage, the party petitioning for the termination must show by clear, cogent, and convincing evidence that grounds authorizing the termination of parental rights exist." In re Young, 346 N.C. 244, 247, 485 S.E.2d 612, 614 (1997) (citation omitted). The standard for appellate review is whether the trial court's findings of fact are supported by clear, cogent, and convincing evidence and whether those findings of fact support its conclusions of law. In re Huff, 140 N.C.App. 288, 291, 536 S.E.2d 838, 840 (2000), disc. rev. denied, 353 N.C. 374, 547 S.E.2d 9 (2001). "Clear, cogent, and convincing describes an evidentiary standard stricter than a preponderance of the evidence, but less stringent than proof beyond a reasonable doubt." N.C. State Bar v. Sheffield, 73 N.C.App. 349, 354, 326 S.E.2d 320, 323 (citation omitted), cert. denied, 314 N.C. 117, 332 S.E.2d 482 (1985). We review the trial court's conclusions of law de novo. Starco, Inc. v. AMG Bonding and Ins. Services, 124 N.C.App. 332, 336, 477 S.E.2d 211, 215 (1996).

II. Analysis
Respondent argues the trial court's findings of fact are insufficient to support the trial court's conclusion of law that A.S. was a neglected juvenile. I agree.
A neglected juvenile is statutorily defined as:
[a] juvenile who does not receive proper care, supervision, or discipline from the juvenile's parent, guardian, custodian, or caretaker; or who has been abandoned; or who is not provided necessary medical care; or who is not provided necessary remedial care; or who lives in an environment injurious to the juvenile's welfare; or who has been placed for care or adoption in violation of law. In determining whether a juvenile is a neglected juvenile, it is relevant whether that juvenile lives in a home where another juvenile has died as a result of suspected abuse or neglect or lives in a home where another juvenile has been subjected to abuse or neglect by an adult who regularly lives in the home.
N.C. Gen.Stat. § 7B-101(15) (2007). To adjudicate a juvenile as neglected, the court must find some physical, mental, or emotional impairment of the juvenile or a substantial risk of such impairment as a consequence of *324 the parent's failure to provide proper care, supervision, or discipline. In re Safriet, 112 N.C.App. 747, 752, 436 S.E.2d 898, 901-02 (1993). When the juvenile being adjudicated was taken into custody immediately upon birth and has never resided in the parent's home, "the decision of the trial court must of necessity be predictive in nature, as the trial court must assess whether there is a substantial risk of future abuse or neglect of a child based on the historical facts of the case." In re McLean, 135 N.C.App. 387, 396, 521 S.E.2d 121, 127 (1999) (emphasis supplied).
This Court has repeatedly held "the fact of prior abuse, standing alone, is not sufficient to support an adjudication of neglect." In re N.G., ___ N.C.App. ___, ___, 650 S.E.2d 45, 51 (2007) (citing In re A.K., 178 N.C.App. 727, 731, 637 S.E.2d 227, 229 (2006)), aff'd, 362 N.C. 229, 657 S.E.2d 355 (2008). In In re A.K., contrary to the majority's assertion, the trial court adjudicated the juvenile to be neglected based upon prior abuse of an older sibling and the parents denial of said abuse. See In re A.K., 178 N.C.App. at 728-29, 637 S.E.2d at 228 ("In its order concluding A.K. was a neglected juvenile, the trial court relied upon the prior adjudication of C.A.K. as a neglected juvenile and the review orders concerning C.A.K." which included the trial court's finding that "the parents of C.A.K. denied that either of them intentionally harmed C.A.K." and its conclusion that "it appears that at least some of the physical injuries sustained by [C.A.K.] are a result of inappropriate force applied to the child's body by her caretaker(s) or while in their care.").
This Court reversed the trial court's adjudication of neglect because:
the trial court did not accept any formal evidence in addition to its consideration of the prior court orders concerning [an older sibling previously removed from the home], and the only order concerning [the older sibling previously removed from the home] that contained findings by the clear and convincing standard of proof was from a hearing occurring many months earlier[.]
Id. at 732, 637 S.E.2d at 230. This Court concluded that because no evidence was introduced that related to the parents' progress or whether one or both of the parents continued to deny the true cause of the older sibling's injuries, in addition to the time that had elapsed from the date of the last hearing, "the trial court could not . . . conclude that `the minor child would be at substantial risk of neglect if placed in the custody of the . . . parents at this time.'" Id.
The facts of In re A.K. are analogous to the facts at bar. In the adjudication portion of its order, the trial court entered fourteen findings of fact all regarding the particulars of a prior incident in which respondent allegedly burned the feet of A.S.'s two-year-old sibling seven months prior to the hearing. The trial court found respondent had denied any wrongdoing and insisted the child's burns were accidental on two occasions, 22 December 2006 and 4 January 2007. No other instances of abuse or neglect were reported or appeared in the evidence before the trial court. The trial court found that "based on the information gathered the mother's explanation is not consistent with the injury[]" and that without the court's intervention, the safety of the infant could not be ensured. (Emphasis supplied).
The trial court's findings of fact regarding a single prior incident of abuse involving another sibling seven months earlier, standing alone, do not support the trial court's conclusion of law that A.S. is a neglected juvenile as defined in N.C. Gen.Stat. § 7B-101(15). In re N.G., ___ N.C.App. at ___, 650 S.E.2d at 51. Further, the record is completely devoid of any evidence that respondent mother has continued to deny responsibility with regards to the prior incident involving A.S.'s sibling. In re A.K., 178 N.C.App. at 731, 637 S.E.2d at 229. Based upon In re N.G. and In re A.K., the trial court's adjudication order must be reversed. ___ N.C.App. at ___, 650 S.E.2d at 51; 178 N.C.App. at 731, 637 S.E.2d at 229.
The majority's opinion cites In re P.M. and In re E.N.S. in support of its holding that the trial court was permitted to conclude A.S. was neglected based upon evidence of prior abuse. In re P.M., 169 N.C.App. 423, 610 S.E.2d 403 (2005); In re E.N.S., 164 N.C.App. 146, 595 S.E.2d 167, disc. rev. denied, *325 359 N.C. 189, 606 S.E.2d 903 (2004). However, both cases are distinguishable from the case at bar.
In both In re P.M. and In re E.N.S., this Court emphasized the respondent's inability and/or refusal to comply with court orders and affirmed the trial court's adjudication of neglect based upon several other factors which indicated there was a substantial risk of future neglect if the juvenile was returned to the parents. In re P.M., 169 N.C.App. at 427, 610 S.E.2d at 406; In re E.N.S., 164 N.C.App. at 150, 595 S.E.2d at 170. Here, the trial court's order is totally devoid of any findings regarding respondent's compliance with DSS's case plan or other factors which would tend to indicate a substantial risk of future neglect if A.S. was returned to respondent.

III. Conclusion
The trial court erred by relying on a single instance of prior abuse to another sibling to adjudicate A.S. as neglected. In re N.G., ___ N.C.App. at ___, 650 S.E.2d at 51. Further, no evidence presented to the trial court tended to show respondent has failed to comply with any DSS case plan or continued to deny responsibility with regards to the prior incident involving A.S.'s older sibling. In re A.K., 178 N.C.App. at 731-32, 637 S.E.2d at 229-30.
The trial court's adjudication of A.S. as a neglected juvenile is not supported by "clear, cogent, and convincing evidence" and must be reversed. In re Young, 346 N.C. at 247, 485 S.E.2d at 614. Because I vote to reverse the adjudication order, remand is unnecessary. The majority's opinion correctly notes the order is fatally defective and lacked the required findings of fact to support its conclusions of law and decretal. I respectfully dissent.
NOTES
[1] The pseudonyms "Teresa," "David," "Isaac," and "Adam" will be used throughout the opinion to protect the children's privacy and for ease of reading.
[2] "The duties of the guardian ad litem program shall be to make an investigation to determine the facts, the needs of the juvenile, and the available resources within the family and community to meet those needs; to facilitate, when appropriate, the settlement of disputed issues; to offer evidence and examine witnesses at adjudication; to explore options with the court at the dispositional hearing; to conduct follow-up investigations to insure that the orders of the court are being properly executed; to report to the court when the needs of the juvenile are not being met; and to protect and promote the best interests of the juvenile until formally relieved of the responsibility by the court." N.C. Gen.Stat. § 7B-601(a).
[3] We also note that while the decretal portion of the order directs respondent to attend parenting classes and complete a psychological test, some documentation in the record indicates that respondent has completed both of those requirements.
[4] Although the order indicates the parents had failed to make progress, we note that, at the time of the hearing, only just over a month had elapsed since DSS filed its petition with respect to Adam and since respondent had been arrested for felony child abuse.