*906 TYSON, Judge, dissenting.
The majority's opinion concludes the trial court's findings support the trial court's conclusion that J.A.M. was neglected. I disagree and respectfully dissent.
I. Definition of Neglect
North Carolina statutes and precedents have consistently required departments of social services to prove by clear and convincing competent evidence that "there be some physical, mental or emotional impairment of the juvenile or substantial risk of such impairment as a consequence of the [parent's] failure to provide 'proper care, supervision, or discipline.' " In re Safriet , 112 N.C. App. 747, 752, 436 S.E.2d 898, 901-02 (1993) (citation omitted). "[T]he decision of the trial court must of necessity be predictive in nature, as the trial court must assess whether there is a substantial risk of future abuse or neglect of a child based on the historical facts of the case." In re E.N.S., 164 N.C. App. 146, 151, 595 S.E.2d 167, 170 (2004) (citation omitted).
*818 "[H]istorical facts of the case" necessarily means the current case and not past or closed cases involving other juveniles. See id. Petitioner cannot assert a post hoc ergo propter hoc fallacy from prior cases to avoid its burden of proof or to overcome the mandates of statutory and case law "procedures for the hearing of juvenile cases that assure fairness and equity and that protect the constitutional rights of juveniles and parents[.]" N.C. Gen. Stat. § 7B-100 (2017).
While N.C. Gen. Stat. § 7B-101(15) provides evidence of abuse of another child in the home is relevant in determining whether a child is a neglected juvenile, it does not require nor support, standing alone, a determination of present or future neglect. In re Nicholson , 114 N.C. App. 91, 94, 440 S.E.2d 852, 854 (1994). That fact, while relevant, cannot overcome the parent's constitutional rights and serve as the only basis to support a finding of current neglect or the probability of future neglect of a different child, who is not impacted by the past neglect. See id. This lack of support is particularly clear where all other evidence before the court shows no neglect of the child at issue has occurred, and where, as here, YFS' evidence shows the parents are meeting and exceeding the needs of the child. Cases cited in the majority's opinion are inapposite and do not control the facts and conclusions before us.
II. In re E.N.S.
In the case of In re E.N.S. , the respondent's older child had been removed from her custody. 164 N.C. App. at 148, 595 S.E.2d at 168. The respondent gave birth to E.N.S., while the respondent was a resident in a residential drug treatment facility, and the child was immediately removed from her care. Id. Soon after E.N.S.' birth, the respondent violated her established curfew at the treatment facility and took a sleeping pill, which was considered a violation of the facility's policy. Id. at 149, 595 S.E.2d at 169.
The respondent subsequently stayed out all night again and smoked marijuana. Id . at 151, 595 S.E.2d at 170. The respondent was discharged from the treatment facility. Id . Further evidence established that the respondent "still struggle[d] with substance abuse." Id . This Court recognized the evidence revealed that the respondent's behavior had not improved and "the trial court carefully weighed and assessed the evidence regarding a past adjudication of neglect and the likelihood of its continuation in the future before concluding that E.N.S. would be at risk if allowed to remain with respondent." Id. Unlike those facts, here the evidence shows Respondent gave birth to another healthy child who was taken to an appropriate home. Nothing shows Respondent is taking *819 drugs or engaging in any activities to put J.A.M. at risk for neglect. All evidence shows J.A.M. is receiving proper care from both parents. In re E.N.S. provides no support for the trial court's order or the analysis and conclusions in the majority's opinion.
III. In re C.G.R.
In the case of In re C.G.R ., 216 N.C. App. 351, 360, 717 S.E.2d 50, 56 (2011), and also unlike the facts before us, "the trial court's finding that Mary was a neglected juvenile was not based only on respondent's prior neglect of Charlie." The trial court made additional findings that the respondent had failed to maintain stable employment and *907 housing and continued to be dependent upon others. Id.
In light of the respondent's prior neglect of another child in C.G.R. and her demonstrated ongoing inability to maintain housing and employment to support her current child, this Court held "the trial court's finding that Mary 'is at a substantial risk of continued neglect as a result of [the respondent's] failure to provide and maintain stable housing and maintain employment' was supported by the evidence and findings." Id.
Here, the trial court's order contains no findings of fact, which are supported by any evidence, and certainly not "clear and convincing competent evidence," that J.A.M. is presently at substantial risk of neglect by Respondent-mother. The trial court's decision "must of necessity be predictive in nature, as the trial court must assess whether there is a substantial risk of future abuse or neglect of a child based on the historical facts of the case ." In re McLean , 135 N.C. App. 387, 396, 521 S.E.2d 121, 127 (1999) (emphasis supplied). The historical and current facts of this case , regarding J.A.M.'s care, shows no evidence to support either YFS' allegations or an adjudication of neglect. YFS' allegations of neglect of J.A.M. cannot be validated solely on what occurred to Respondent's other children in a wholly different past and closed case where all evidence before the court shows J.A.M. is receiving proper care. See id.
IV. Lacking Findings of Fact
The trial court neither found nor cited any evidence presented by YFS that either of the parents had not remedied the issues that caused the prior injurious environments. I do not diminish Respondent's prior history in a closed and unrelated case with her other children, and the fact one of her children was seriously injured by that child's father, while Respondent slept. However, the uncontroverted testimony both YFS and Respondent presented at J.A.M.'s adjudication hearing "on the historical facts of the case" shows she has not been neglected by either parent. See id.
*820 The court did not find J.A.M. had suffered from any neglect or abuse, or that there is any future probability that she is at a substantial risk to suffer from any physical, mental, or emotional impairment as a consequence of living in Respondent-mother's home. See In re M.P.M. , 243 N.C. App. 41, 52, 776 S.E.2d 687, 694 (2015) aff'd per curiam, 368 N.C. 704, 782 S.E.2d 510 (2016). The trial court also made no findings of fact regarding any current domestic violence. No evidence was presented of any instances of domestic violence between Respondent-mother and J.A.M.'s father or anyone else, or that either parent had engaged in domestic violence while in J.A.M.'s presence.
The uncontroverted testimony at the adjudication hearing showed Respondent's home is safe and appropriate for J.A.M., that she was "well-cared-for" by both parents, that no evidence of domestic violence between the parents had been displayed, and that the police had never been called to their residence.
A YFS supervisor testified that Respondent refused to sign their safety assessment, which was solely based upon YFS' previous history with Respondent and her other children, and in direct conflict with the findings from the home visit and subsequent supervised visits. The YFS supervisor testified that when her social worker went to Respondent's home, Respondent reported "she had gone through services, she didn't need any services, and that there was no domestic violence going on[.]" The supervisor testified the home was appropriate for the child, with adequate supplies for her, and there were utilities, adequate food, clothing and a bed.
All the evidence before the trial court shows Respondent-mother and J.A.M.'s father maintained an appropriate home, and both denied any YFS services were required to meet J.A.M.'s needs, or to correct conditions in their home or its suitability for J.A.M. Based upon the home visits and interviews with both parents, YFS had no evidence any such services were needed or authorized. No evidence in the record and no findings support any lack of suitability of J.A.M.'s current home environment or J.A.M.'s need for YFS' intervention in this case.
*908 The trial court's order further does not reflect any current or continuing concern regarding domestic violence involving J.A.M.'s father, as the court's disposition order directs a primary plan of care for J.A.M. to be "reunification with father." Given the intervening years between the prior cases and the record facts found before us, the trial court's findings do not support a legal conclusion that J.A.M. is a neglected juvenile. See In re A.K. , 178 N.C. App. 727, 732, 637 S.E.2d 227, 230 (2006) (holding *821 the trial court erred in relying solely upon nine- and fifteen-month-old orders concluding a juvenile's sibling was neglected to support a conclusion that the juvenile was also neglected).
These findings do not support any conclusion that J.A.M. is a neglected juvenile because she lives in an environment injurious to her welfare. YFS has failed to show any current neglect or "a substantial risk of future abuse or neglect of [J.A.M.] based on the historical facts of the case[.]" In re E.N.S. at 151, 595 S.E.2d at 170.
The trial court makes no findings of fact, which are supported by "clear and convincing competent evidence" to support an adjudication that J.A.M. is presently at substantial risk of neglect by Respondent-mother to warrant YFS' intervention. Respondent-mother and J.A.M.'s father have the absolute constitutional, statutory, and natural rights as parents to refuse YFS' services or involvement in raising and parenting their daughter in the absence of any statutory basis for YFS' intervention. Troxel v. Granville, 530 U.S. 57, 68-69, 120 S.Ct. 2054, 2061-62, 147 L.Ed.2d 49, 58 (2000), Santosky v. Kramer, 455 U.S. 745, 753, 102 S.Ct. 1388, 1394-95, 71 L.Ed.2d 599, 606 (1982), In re Stumbo , 357 N.C. 279, 286, 582 S.E.2d 255, 261 (2003).
YFS failed to provide any "clear and convincing competent evidence" of any provision in the statute to either trigger and mandate their intervention and new involvement. The only evidence YFS received and acted upon was a report that Respondent had given birth to another child. YFS' follow-up visit to that report at the home showed J.A.M. was healthy and receiving proper care from both parents, and the conditions in the home were appropriate.
The trial court's disposition order directs a primary plan of care for J.A.M. to be "reunification with father," even though he had also had his parental rights terminated to another child, not involving Respondent-mother. Father's adjudication is not before us.
At this initial adjudication disposition, the trial court failed to allow any unsupervised or meaningful visitation between the parents and their child, notwithstanding that the YFS' court summary admitted at the disposition hearing indicated that the visits between Respondent-mother and J.A.M. were positive and entirely appropriate. The trial court also failed to find or provide for J.A.M.'s reunification with Respondent-mother as either a primary or alternative plan for J.A.M.'s care, custody, or control. This failure, in light of all the "clear and convincing competent evidence" of J.A.M. receiving proper care from both parents in an appropriate home, is deeply troubling, and is a de facto termination of *822 Respondent's parental rights. The majority's opinion fails to recognize, reconcile and properly apply our statutes and case law to this case.
V. Conclusion
A prior and closed case with other children and a different father, standing alone, cannot support an adjudication of current or future neglect of J.A.M. by Respondent. The majority's opinion presumes Respondent's continued lack of being a fit and proper parent, based upon past adjudications of her other children. YFS has no authority to intervene and inject itself into these parents' care, custody and control of their child in an appropriate home or to demand a services agreement in the absence of a statutory basis to compel their involvement.
On remand from the Supreme Court of North Carolina for proper application of the appellate standard of review to the trial court's findings and conclusions of law, the majority's opinion wholly fails to follow the statutory and constitutional mandates. Both the Constitution of the United States, the North Carolina Constitution, and the General Assembly's public policy, expressed in the statutes, demands YFS and the trial court to provide "procedures for the hearing of juvenile *909 cases that assure fairness and equity and that protect the constitutional rights of juveniles and parents[.]" N.C. Gen. Stat. § 7B-100 ; Troxel v. Granville, 530 U.S. at 68-69, 120 S.Ct. at 2061-62, 147 L.Ed.2d at 58.
YFS failed to carry its burden to show any evidence to support an adjudication of any neglect. The trial court's findings do not support its conclusion to adjudicate J.A.M. as neglected. Exercising the applicable standard of review, Respondent's constitutional and statutory rights as a parent, and the Supreme Court's mandate, the trial court's order is properly reversed. The majority opinion's analysis and conclusions are erroneous. I respectfully dissent.